UNITED STATES, Appellee,

v.

Thaddeus A. FRAZIER, First Lieutenant
U.S. Army, Appellant.

No. 66,781.
CM 9000756.

U.S. Court of Military Appeals.

Argued March 11, 1992.

Decided April 28, 1992.

For Appellant: *Captain Michael J. Berrigan* (argued); *Colonel Robert B. Kirby* (on brief); *Captain Gregory A. Gross.*

For Appellee: *Captain Timothy W. Lucas* (argued); *Colonel Dayton M. Cramer and Lieutenant Colonel Daniel J. Dell'Orto* (on brief).

*Opinion of the Court*

SULLIVAN, Chief Judge:

Appellant's general court-martial was conducted at Fuerth, Germany, before members between December 1989 and March 1990. Contrary to his pleas, he was found guilty of the attempted rape of Ms. Marion Lang; engaging in conduct unbecoming an officer with Mrs. Anne Brown; and committing an indecent act upon Ms. Ute Kohl, a female under the age of 16, in violation of Articles 80, 133, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 933, and 934, respectively. He was sentenced to dismissal, as well as confine-

ment and forfeiture of $1500 pay per month for 48 months. The convening authority approved this sentence on July 30, 1990. The Court of Military Review affirmed the findings and sentence on May 29, 1991, in a short-form decision.

On September 17, 1991, this Court granted review on the following questions of law:[1]

# I

WHETHER THE MILITARY JUDGE ERRED BY DENYING THE DEFENSE MOTION FOR A FINDING OF NOT GUILTY TO CHARGE III (CONDUCT UNBECOMING AN OFFICER).

# II

WHETHER THE EVIDENCE IS SUFFICIENT AS A MATTER OF LAW TO SUPPORT THE FINDING OF GUILTY TO CHARGE III (CONDUCT UNBECOMING AN OFFICER).

We hold that the military judge did not err in denying the defense motion for a finding of not guilty and that sufficient evidence of record[2] exists to support this conviction for conduct unbecoming an officer. *See United States v. Lee*, 4 CMR 185, 189 (ABR),

*pet. denied*, 1 USCMA 712, 4 CMR 173 (1952). *See generally Parker v. Levy*, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974). *See also United States v. Dellarosa*, 30 MJ 255, 259 (CMA 1990).

Appellant was charged with various offenses involving five different women, Martina Poehler, Anne Brown, Marion Lang, Fran Kreuzer, and Ute Kohl. This appeal concerns a single specification involving Anne Brown. It states:

> Specification: In that [appellant] did at Vilseck, Germany, from on or about 7 August 1989, to on or about 4 September 1989, wrongfully engage in an open and intimate relationship, by living in the same quarters with Anne Brown, a woman who is married to another soldier, to wit: SPC Cecil Brown, such conduct is unbecoming an officer and gentleman, and of a nature to bring discredit upon the armed forces.

The prosecution presented the following evidence on this charge. Ursula Kohl, a German national and mother of Ute Kohl, testified that she lived across the street from appellant for about 1 year. She stated that she met him "at a disco." She further testified that a woman named Anne

---

1. We heard oral argument in this case at the United States Military Academy at West Point, New York, on March 11, 1992, at the invitation of the Department of Law, United States Military Academy, and without objection from the parties involved. *See* Foundation of the Federal Bar Association, *Equal Justice Under Law: The Supreme Court in American Life* 15–18 (1965); *see also* D. O'Brien, *Storm Center: The Supreme Court in American Politics* 78, 135–40 (2d ed. 1990). This procedure is similar to the well-established practice of the United States Court of Appeals for the Eighth Circuit which holds hearings at various law schools within its circuit.

The United States Court of Military Appeals conducts a hearing such as this outside its permanent courthouse in Washington, D.C., as part of its "Project Outreach," a public awareness project which demonstrates not only the operation of a Federal appellate court but also the quality and effectiveness of the criminal justice system of our Armed Services, the Uniform Code of Military Justice (Arts. 1–146, 10 U.S.C. §§ 801–946, respectively). It is hoped that the thousands of students, service persons, military and civilian attorneys, and members of the

American public who witness these hearings will realize that America is a democracy that can maintain an Armed Force instilled with the appropriate discipline to make it a world power and yet afford the members of that Armed Force a fair and impartial justice system which does provide the full protection of the Constitution of the United States and Federal law to its members.

2. The assigned issues as framed suggest that our review of the record for purposes of assessing the propriety of the military judge's denial of the motion for a finding of not guilty is limited to the evidence presented in the Government's case-in-chief. *See Cephus v. United States*, 324 F.2d 893, 895–97 (D.C.Cir.1963) (dictum). However, the practice in Federal courts is that the whole record can be considered where the defense presents evidence after denial of such a motion. *See United States v. Foster*, 783 F.2d 1087, 1088 n. 3 (D.C.Cir.1986); *United States v. Bland*, 653 F.2d 989, 995 (5th Cir.1981). RCM 917(g), Manual for Courts-Martial, United States, 1984, postulates this rule as well, which we join.

lived with him beginning in early July and was at his apartment "on a daily basis."

A second prosecution witness, Martina Poehler, also a German national, testified that she knew appellant from the "Amberg Inside Discotheque." She testified that Anne Brown was his girlfriend who once accused her of "making up to her man." The record further states:

Q. Did she go to the Inside a lot?

A. Yes.

Q. Did she go with the accused?

A. Yes.

Q. Did you ever see the accused and Anne Brown show affection toward one another?

A. Yes.

Q. And how did they show affection?

A. Well, they were dancing close to each other, they were arm in arm, hand in hand, kissing each other.

Q. Did you ever see the accused at the Inside Club without Anne Brown?

A. Yes, once.

\*   \*   \*   \*   \*   \*

Q. Do you know whether or not Anne Brown was living with Lieutenant Frazier?

A. Yes, she did.

Q. How do you know this?

A. She told me that and I was also able to recognize that when I was inside the apartment, and he also told me that.

Q. Do you know if Anne Brown was married at that time?

A. Yes.

A third prosecution witness testified in the prosecution's case-in-chief. His name was Sergeant Cecil Brown. He stated that he worked with appellant from November or December of 1988 to February 1989. He stated that he had been married to Anne since June 2, 1989.

A fourth prosecution witness, Marion Lang, also testified concerning the appellant and Anne Brown, as follows:

A. Well we, again discussed the same subject which we had discussed in the beginning, that is, Martina, himself, myself. I also asked him what about Anne and he replied by saying there is nothing at all about Anne, because I had asked him whether she wouldn't be his girlfriend.

Q. Who is Anne?

A. I always saw her together with him in the Inside Disco.

Q. Do you know Anne's last name?

A. Brown.

Q. How often would you see Anne Brown and the accused at the Inside Club?

A. Almost each weekend, Friday and Saturday.

Q. Can you remember the period of time?

A. You mean, when that started that I saw them there or how often?

Q. Yes, when she first saw them.

A. When it started exactly, I can't recall anymore, but I started to go to the Inside in June and I would say that I saw them the first time perhaps a week later and after that almost each weekend.

Q. Did you ever see the accused and Anne Brown show affection toward each other?

A. Well, for example, when they played slow music then they were dancing closely together.

At the close of the prosecution's case, appellant made a motion for a finding of not guilty on the conduct-unbecoming charge. The record states:

IMC: The second motion is a motion for a finding of not guilty on the Specification of Charge III and my co-counsel is prepared to discuss the case law on that.

DC: Your Honor, looking to the specification and the charge, you'll note that it's been charged that the accused wrongfully engaged in an open and intimate relationship by living in the same

quarters with Anne Brown. *Now, the government's only evidence establishes that there was nothing open or intimate about the relationship within the quarters.* In fact, their only witness that they presented was that of Martina Poehler who was asleep most of the time and the most she could relate to this court or to the court was the fact that she cooked breakfast there. And that was the extent of the evidence presented by the government with regard to this particular specification. It is our position that under the ruling of *U.S. versus [Guaglione]* under 27 MJ 268 [CMA 1988] and, also, there's persuasive authority for *U.S. versus [Johanns]* 17 MJ 86284109914 [AFCMR 1983], an AFCMR case, that *this is simply just a mere presence and that is not enough to equate with regard to the charge of conduct unbecoming.* And, therefore, based upon the evidence that you've heard here today, that does not meet the specification as charged for an open and intimate relationship by living together. And the only evidence that you have of that is the testimony of Martina Poehler as to what went on while they were at the apartment to get something to eat.

MJ: Thank you. Prosecutor?

ATC: Your Honor, the government believes that you can also look at the evidence of Frau Kohl who testified about seeing [Anne] Brown around the apartment and going to the apartment and living in the apartment. Further, the members could find by exceptions and substitutions that Lieutenant Frazier engaged in an intimate and open relationship with Anne Brown outside of the quarters. So, there's several possibilities and that charge and specification should, again, be allowed to go to the members for their determination. There's been enough evidence to meet the minimum evidence standard right now.

MJ: The motion to dismiss—Do you care to say anything?

DC: No.

MJ: The motion to dismiss the Specification of Charge III is denied....

(Emphasis added.)

The defense then presented its case. Mrs. Anne Brown's videotaped deposition was admitted into evidence. She testified that she had been married to Sergeant Cecil Brown since June 2, 1989, and had met appellant through her husband sometime before. She acknowledged that both men had military duty together. She further stated that she became "a house guest" of appellant's beginning at the end of August until sometime in September. She stated that her husband's lease had run out and, with her husband's approval, she had asked appellant if she could stay at his house. She stated that they slept in different rooms and did not have sex with each other. She also stated that she "was good friends" with appellant and went to clubs with him. She denied "holding hands" with him or "close dancing."

The defense also called Sergeant Cecil Brown as a witness. He again stated that he was married to Anne Brown on June 2, 1989. He stated that he left Germany on leave to go to a new duty station on June 15, 1989, and his wife, due to visa problems, could not join him in the United States until September 20, 1989. He stated that he kept track of his wife's whereabouts by daily phone calls. He testified that in late August or early September his wife asked his permission to stay at appellant's house while he was on leave and he gave her that "permission."

– – –

■ The officer members of appellant's court-martial found him guilty of conduct unbecoming an officer because he did "wrongfully engage in an open and intimate relationship, by living in the same quarters with Anne Brown, a woman who is married to another soldier, to wit: SPC Cecil Brown." Art. 133. *See* para. 59b, Part IV, Manual for Courts–Martial, United States, 1984. This finding of guilty raises two related, but nonetheless, distinct questions of law. First, whether the conduct of appellant as alleged in this specifi-

cation and as found by the members constituted conduct unbecoming an officer as a matter of law. *See Parker v. Levy, supra; United States v. Lewis,* 28 MJ 179 (CMA 1989); *cf. United States v. Guaglione,* 27 MJ 268 (CMA 1988). Second, whether the record of trial contains sufficient evidence from which a rational factfinder could find beyond a reasonable doubt that this conduct occurred as a matter of fact. *See Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Dellarosa,* 30 MJ at 259; *cf. United States v. Wray,* 17 MJ 375 (CMA 1984).

In *Parker v. Levy, supra,* the Supreme Court of the United States decided that a military officer could be lawfully held to a more exacting code of conduct than an enlisted person or civilian. It reached this conclusion in part because it "recognized that a military officer holds a particular position of responsibility and command in the Armed Forces." 417 U.S. at 745, 94 S.Ct. at 2556. *See Orloff v. Willoughby,* 345 U.S. 83, 91, 73 S.Ct. 534, 539, 97 L.Ed. 842 (1953). The Court also clearly acknowledged the operational realities confronting our armed forces which might prevent an officer from completing his military mission. 417 U.S. at 743–44, 94 S.Ct. at 2555–56. *See Goldman v. Weinberger,* 475 U.S. 503, 507–08, 106 S.Ct. 1310, 1313–14, 89 L.Ed.2d 478 (1986). In sum, the need for effective leadership in harm's way requires a broader scope of criminal accountability for the service officer.

■■■ We note that one critically important responsibility of a military officer is to inspire the trust and respect of the enlisted soldiers who must obey his orders and follow his leadership. *See United States v. Giordano,* 15 USCMA 163, 169, 35 CMR 135, 141 (1964); *see also United States v. Lewis, supra. See generally* L. Crocker, *Army Officer's Guide* 42–43 (44th ed. 1988). Our Court has also recognized, at least impliedly, that the military family plays a valued role in supporting those

servicemembers in the performance of the above duties. *See United States v. Choate,* 32 MJ 423, 426 (CMA 1991); *United States v. Wilson,* 28 MJ 48, 49–50 (CMA 1989); *United States v. Jefferson,* 21 MJ 203 (CMA 1986). *See also United States v. Reed,* 9 CMR 396, 403 (ABR), *pet. denied,* 3 USCMA 810, 10 CMR 159 (1953). *See generally* para. 1–5, Army Regulation 608–99 (Nov.1985). Consequently, conduct of an officer which substantially denigrates the marital relationship of an enlisted subordinate or exhibits a flagrant disrespect for an enlisted man's family severely erodes confidence in command and, thus, unquestionably constitutes conduct unbecoming an officer. *See Parker v. Levy, supra* at 754–55, 94 S.Ct. at 2560–61. *See* Nelson, *Conduct Expected of An Officer and a Gentleman: Ambiguity,* 12 A.F.JAG L.Rev. 124, 140 (Spring 1970) (suggests a shock-the-conscience test).

Nevertheless, appellant asserts that he was only on notice that unlawful sexual intercourse with an enlisted man's wife or wrongful cohabitation with the same constituted the criminal offense of conduct unbecoming an officer. Clearly such conduct could constitute conduct unbecoming an officer. *See United States v. Jefferson, supra.* However, Article 133 and its predecessors have never been so narrowly construed, and related conduct by an officer which substantially undermines his leadership position is equally punishable under the above codal provision. More particularly, long ago in *United States v. Lee,* 4 CMR at 189, the Army Board of Review held that Article 133 was violated when an officer and an enlisted man's wife, both semi-clad, were discovered in the absent enlisted man's quarters at 3:00 a.m. *See United States v. Francis,* 12 CMR 695, 703 (AFBR), *pet. denied,* 3 USCMA 837, 13 CMR 142 (1953). *See generally* W. Winthrop, *Military Law and Precedents* 716 n. 44 (2d ed. 1920 Reprint). Accordingly, we conclude that a reasonable military officer would have no doubt[3] that the activities

---

3. As aptly stated in *United States v. Lee,* 4 CMR 185, 189 (ABR), *pet. denied,* 1 USCMA 712, 4 CMR 173 (1952):

charged in this case constituted conduct unbecoming an officer. *See Parker v. Levy, supra* at 757, 94 S.Ct. at 2562.

■ Appellant's second contention in this case is that the record does not show that he and Mrs. Brown "engage[d] in an open and intimate relationship" as charged. He asserts that the record shows only that Mrs. Brown was merely a house guest in his quarters for a short period of time and that they had "a discreet, social relationship." Final Brief at 7. Consequently, he claims that a fatal variance of proof occurred in this case requiring reversal of his conviction. *See United States v. Wray, supra.*

In considering a claim of insufficient evidence, it is well established that "the relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Hart,* 25 MJ 143, 146 (CMA 1987) (citing *Jackson v. Virginia,* 443 U.S. at 318–19, 99 S.Ct. at 2788–89),

*cert. denied,* 488 U.S. 830, 109 S.Ct. 85, 102 L.Ed.2d 61 (1988). Moreover, we also hold that a court-martial need not accept the testimony of any witness at trial as dispositive on the matter about which he or she testifies. *See United States v. Williams,* 21 MJ 360, 362 (CMA 1986).

Here, the deposed testimony of the servicemember's wife and the trial testimony of her absent husband support the defense's benign characterization of appellant's conduct as the act of a good samaritan or concerned officer. However, the testimony of the government witnesses tended to show that appellant and Mrs. Brown maintained a boyfriend-girlfriend relationship in public at the same time they were openly residing in the same living quarters. No variance of proof or evidentiary insufficiency exists in these circumstances.[4]

The decision of the United States Army Court of Military Review is affirmed.

Judges COX, CRAWFORD, GIERKE and WISS concur.

---

It is clear that the presence of the accused with an enlisted man's wife in the circumstances here alleged where even the unsophisticated would infer the existence of a meretricious relationship not only compromises his position as an officer but also prejudices good order and military discipline.

4. Appellant's challenge at trial was that the sharing of quarters was not in and of itself "open

and intimate." However, the evidence clearly demonstrated that the living arrangement was not concealed. Moreover, their evidenced conduct in the disco also supported a reasonable inference concerning the nature of their private conduct. *See United States v. Lee,* 4 CMR at 189.