OPINION OF THE COURT
PEARSON, Senior Judge:
A general court-martial sitting with members convicted appellant of engaging in conduct unbecoming an officer by having a close *803 personal relationship, to include hugging and kissing, with an enlisted female who was married to another enlisted member. Article 133, UCMJ, 10 U.S.C. § 933. The court acquitted him of a separate charge of fraternizing on terms of military equality with the same enlisted female. Article 134, UCMJ, 10 U.S.C. § 934. The court sentenced appellant to dismissal from the service, which the convening authority approved.
Before us, appellant contends the specification alleging the conduct unbecoming offense was improperly amended before trial and the evidence is legally and factually insufficient to prove his guilt. We find the amendment lawful and the evidence sufficient.
FACTS
Appellant met Senior Airman Tracy Davis (then named Dirksen) at her duty location in the personnel office at Grand Forks Air Force Base, North Dakota, when he processed into the base in July or August 1992. She helped him with some personnel matters incident to his assignment orders before he left for temporary duty in September 1992. While away, he sent Airman Davis a postcard.
Appellant returned to Grand Forks in February 1993. Sometime during the spring, he ran into Airman Davis at a local lumber store, and she introduced him to her husband. Later that same evening, Airman Davis telephoned appellant and invited him to dine and play cards with her, her husband, and another airman friend. Appellant accepted.
During the card game, appellant played as Airman Davis’ partner, and she occasionally referred to him as “Al.” All went well until Airman Davis’ husband, Senior Airman Dirk-sen, dropped a card on the floor. When he went to pick it up, he saw Airman Davis’ bare foot resting on the seat of appellant’s chair between his legs. Upset, Airman Dirk-sen stopped the game.
Appellant also visited and telephoned Airman Davis at work. Senior Airman Bielinski, a co-worker and friend of Airman Davis, recalled that appellant and Airman Davis talked on the phone at least every other day. Airman Bielinski overheard Airman Davis refer to appellant “affectionately” during some calls and end them by saying she “loved him.” In June or July 1993, Airman Bielinski went with Davis to appellant’s residence. Appellant was not home, but they went inside because Davis had a key. When appellant arrived, he hugged Davis and kissed her on the lips. As Bielinski and Davis left, appellant gave Davis an “open-mouth” kiss and “both said that they loved each other.”
Sometime between the card game and November 1993, Airman Davis and Airman Dirksen separated due to marital difficulties. She stored personal property at appellant’s quarters and spent the night there on at least two occasions. In November 1993, Airman Davis and her husband briefly reconciled, and he went with her to appellant’s residence to retrieve some personal items and furniture.
Several officers testified they routinely saw Airman Davis at appellant’s apartment, sometimes late at night. Second Lieutenant Waller, one of appellant’s friends, became concerned about the relationship. He told appellant that “he would probably be better off if he went and talked to somebody” about it because he wasn’t sure if appellant was “going beyond the scope of fraternization or what the perceived policy of fraternization was.”
Appellant put a different spin on the facts. He contended Airman Davis was a “platonic” friend whom he “comforted” during marital problems before her divorce on January 6, 1994. He denied any romantic activity, and said she spent the night at his residence once because of a blizzard and a second time due to car problems.
AMENDMENT TO THE SPECIFICATION
As charged and referred to trial, the specification pleading the conduct unbecoming offense alleged that on “divers occasions” appellant did “from on or about 1 August 1992 to on or about 15 March 1994, wrongfully and dishonorably have a close personal relationship to include hugging and kissing with Senior Airman Tracy L. Davis.” The specifi *804 cation alleging the fraternization offense referred to the same relationship, but alleged appellant associated with her “on terms of military equality5’ in violation of a custom of the service.
Before trial, the prosecutor, at the convening authority’s direction, amended the conduct unbecoming specification to (1) shorten the ending date to “6 January 1994,” (2) add that the relationship was displayed “openly,” and (3) describe Airman Davis’ marital status. At trial, appellant moved to dismiss the “openly” and marital status amendments as improper “major” changes because they changed the nature of the offense from a “fraternization type” offense to another form of conduct unbecoming offense. Although the record is not clear when appellant learned of the amendment, he did not claim surprise or request a delay to revise his defense strategy.
The prosecutor countered that the government always saw that appellant’s conduct raised two different offenses: one for fraternization based on appellant’s relationship with an enlisted member, and another for conduct unbecoming an officer, based on his relationship with a female enlisted member who was married to another enlisted member. The prosecutor explained that the “6 January” date reflected Airman Davis’ date of divorce, and the other amendments were “minor” changes which would merely narrow the court’s focus on the distinction between the two offenses. The military judge agreed and denied relief.

The Law

Before arraignment, a prosecutor may make “minor” changes to specifications without restriction. R.C.M. 603(b). However, a prosecutor may not make “major” changes, over an accused’s objection, without re-preferring the offense. R.C.M. 603(d). “Minor” changes include those that do not add (1) a party, (2) an offense, or (3) substantial matter not included in the charged offense, or (4) are likely to mislead the accused. R.C.M. 603(a). See also United States v. Sullivan, 42 M.J. 360 (1995).
For instance, an amendment is a major change when it converts a specification which did not allege an offense into one that does. United States v. Garrett, 17 M.J. 907 (A.F.C.M.R.1984) (before amendment, adultery specification under Article 134, UCMJ, failed to allege that one of the participants was married to another). Likewise, an amendment is major when it alleges an entirely new means, or way, that the offense was committed or increases the maximum punishment. United States v. Murray, 43 M.J. 507 (A.F.Ct.Crim.App.1995) (aggravated assault specification amended from using gun only as a club to using it as a firearm); United States v. Longmire, 39 M.J. 536 (A.C.M.R.1994) (amendment to specification alleging disobedience of orders changed date of order and identity of issuer).

Discussion

We conclude the amendments to the specification were minor changes. First, we are satisfied that a specification which alleges that a male officer wrongfully and dishonorably had a close personal relationship with a female enlisted member states an offense under military law. See United States v. Boyett, 42 M.J. 150, cert, denied, — U.S. -, 116 S.Ct. 308, 133 L.Ed.2d 212 (1995); United States v. Frazier, 34 M.J. 194 (C.M.A.1992). Thus, the amendments did not salvage a defective pleading. Garrett; cf. United States v. King, 34 M.J. 95 (C.M.A.1992) (specification of adultery under Article 134, UCMJ, omitted that one of the parties was married to a third party).
Second, the amendments did not change the means, or way, the basic offense was alleged to have occurred, that is through a “close personal relationship to include hugging and kissing.” Nor did they increase the maximum punishment. See Murray.
Third, the amendments did not modify the identity of the parties. The marital status revision merely narrowed the focus of the prosecution’s case, and added descriptive information which appellate defense counsel conceded in oral argument was already admissible at trial to prove the wrongful and dishonorable nature of appellant’s conduct.
Finally, the amendments did not add substantial matter not included in the charged *805 offense or mislead appellant. In this regard, appellant did not claim surprise or ask for a delay to prepare his defense to the amendments for the very simple reason that Airman Davis’ marital status and his conduct with her in front of third parties was fully explored at the pretrial investigation. See Article 32, UCMJ, 10 U.S.C. § 832. Likewise, the amendments did not impact his trial strategy, which was “we were just friends.” See Sullivan; United States v. Evans, 37 M.J. 468 (C.M.A.1993).

The Caveat

Although we have concluded that the amendments here were minor, we caution prosecutors and staff judge advocates to tread softly when amending specifications to add significant matters without re-swearing the offenses.
An accused has an enforceable right to be tried only on sworn charges, a right our amendment rules is designed to protect. See Longmire; United States v. Miller, 31 M.J. 798 (A.F.C.M.R.1990), aff'd, 33 M.J. 235 (C.M.A.1991). Minor changes within Rule for Courts-Martial 603 do not infringe on that right. Here, the thrust of the case, as conceded by appellate government counsel in oral argument, was appellant’s relationship with an enlisted man’s wife, an aspect of the case not explicitly pled at the outset. If appellant had claimed surprise to the government’s theory at trial, we may very well have concluded the marital status amendment was of such substance as to have prejudiced appellant.
As appellate government counsel cordially conceded during argument, re-preferral and re-referral of the amended specification would not have cost the government much delay or effort in this case, particularly when compared to the length of time and work the appellate issue involving it has cost. For example, a new pretrial investigation was not required since the subject matter of the “new” specification was already covered by an earlier investigation. Article 32, UCMJ; R.C.M. 405(b). At most, service of the “new” specification may have caused a 5-day delay in proceeding to trial due to the statutory waiting period, which appellant could’ve waived. Article 35, UCMJ, 10 U.S.C. § 835.
LEGAL AND FACTUAL SUFFICIENCY
Of course, we recognize that pleading an offense properly and proving criminal conduct in fact occurred are horses of a different color. That brings us to the next issue. Compare Boyett (upholding male Air Force lieutenant’s guilty plea to conduct unbecoming an officer by engaging in “unprofessional close personal social relationship, including sexual intercourse” with female airman) with United States v. Guaglione, 27 M.J. 268 (C.M.A.1988) (under the facts, Army lieutenant not guilty of conduct unbecoming an officer by visiting German house of prostitution with three privates first class).
Appellant contends the evidence is not sufficient to prove his guilt of any offense because neither Airman Davis nor her husband fell within his chain of command or supervision, and evidence of a sexual relationship is lacking since Airman Davis did not testify. We disagree.
Conduct unbecoming an officer includes behavior in an unofficial or personal capacity, which, in dishonoring or disgracing the officer personally, seriously compromises the person’s standing as an officer. Manual for Courts-Marital, United States, 1984, Part IV, ¶ 59c(2). An officer’s close personal relationship with an enlisted member or the spouse of an enlisted member may fall within that prohibited behavior. United States v. Dean, 33 M.J. 505 (A.F.C.M.R.1991) (relationship with enlisted member); Frazier (relationship with enlisted member’s spouse).
For example, “conduct of an officer which substantially denigrates the marital relationship of an enlisted subordinate or exhibits flagrant disrespect for an enlisted man’s family severely erodes confidence in command and, thus, unquestionably constitutes conduct unbecoming an officer.” Frazier, 34 M.J. at 198. We have such conduct here even though Airman Davis’ husband was not in appellant’s chain of command or supervision. Airman Davis’ husband was still subject to obeying appellant’s orders as an Air Force officer, and appellant’s conduct showed a
*806 marked disdain for the marriage of an Air Force enlisted member.
In this regard, we reject appellant’s “Good Samaritan” defense. We conclude the witnesses described a boyfriend-girlfriend relationship with an enlisted female which compromised appellant’s standing as an officer. Appellant conceded on cross-examination that “rumors” existed that his relationship with Airman Davis was more than friendship and could’ve undermined his ability to lead as an officer. Likewise, he also had to backpedal from his earlier pretrial statements conceding only friendly kisses to Airman Davis’ cheek. “[A] reasonable military officer would have no doubt that the activities charged in this case constituted conduct unbecoming an officer.” Frazier, 34 M.J. at 198-199 (footnote omitted).
Consequently, we are convinced of the legal and factual sufficiency of the evidence to support the conviction. United States v. Turner, 25 M.J. 324 (C.M.A.1987). Accordingly, the findings and sentence are correct in law and fact and are
AFFIRMED.
Judges BECKER and MORGAN concur.