*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

## UNITED STATES
Appellee

**v.**

## Jonny GONZALEZ, Lieutenant Colonel
United States Army, Appellant

**No. 25-0032**
Crim. App. No. 20230632

Argued April 30, 2025—Decided September 15, 2025

Military Judges: Maureen A. Kohn (arraignment and motions) and JavierE. Rivera-Rosario (motions and trial)

For Appellant: *Captain Eli M. Creighton* (argued); *Captain Patrick McHenry* and *Scott R. Hockenberry*, Esq. (on brief).

For Appellee: *Captain Vy T. Nguyen* (argued); *Colonel Richard E. Gorini* and *Major Lisa Limb* (on brief).

Judge JOHNSON delivered the opinion of the Court, in which Chief Judge OHLSON, Judge SPARKS, Judge MAGGS, and Judge HARDY joined.

————————

Judge JOHNSON delivered the opinion of the Court.

Appellant was convicted by a panel of members, contrary to his pleas, of conduct unbecoming an officer and a gentleman in violation of Article 133, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 933 (2018). We granted review to determine whether Appellant had fair notice the charged conduct was subject to criminal sanction as conduct unbecoming an officer. We hold that the *Manual for Courts-Martial, United States* (2019 ed.) (*MCM*),[1] Army regulation, and military custom and usage provided Appellant fair notice that kissing a junior enlisted trainee who was not his wife on the lips was prohibited conduct unbecoming an officer. Accordingly, we affirm the judgment of the United States Army Court of Criminal Appeals (ACCA).

## I. Background

In August 2021, Appellant was at a bar in San Antonio, Texas, celebrating his upcoming retirement from the Army with a couple of friends. Appellant struck up a conversation with Seaman Recruit (SR) JT, an enlisted Navy trainee who was at the bar with a group of junior enlisted sailors. Appellant asked SR JT what she did for a living. She jokingly responded, "Oh, I'm a stripper." Appellant told her he was an active-duty lieutenant colonel in the Army stationed at Fort Sam Houston as "an instructor or teacher of some sort" and was "coming up on retirement." He showed her his Common Access Card, drawing attention to his rank.

Upon seeing Appellant's rank, SR JT admitted she was not a stripper, but rather, an enlisted sailor in training to

---

[1] Unless otherwise indicated, all references herein to the *MCM* are to the 2019 edition, which includes the 2018 version of the UCMJ in effect at the time of the charged conduct. Congress subsequently amended Article 133, UCMJ, to remove the words, "and a gentleman." National Defense Authorization Act for Fiscal Year 2022, Pub. L. No. 117-81, § 542, 135 Stat. 1541, 1709 (2021); *see* Article 133, UCMJ, 10 U.S.C. § 933 (Supp. III 2019-2022).

become a hospital corpsman. Appellant remarked that she had "to have at least been a Lieutenant." She responded, "[N]o way, I'm at the lowest totem pole, I'm an E-1, I'm like the very lowest you can get." SR JT testified she felt "flattered" and "giddy" that "someone of his stature" was talking to her.

After a couple of drinks, some conversation, and flirting, Appellant and his friends suggested SR JT and one of the other sailors continue the night with them at another establishment. They set out to walk to a nearby bar but got lost and asked a passerby for directions. The passerby, a professional photographer, escorted the group to the bar where he took photographs of them as they socialized. In one such photograph, Appellant and SR JT can be seen kissing each other on the lips. SR JT testified that "it was a long extended kiss for the photo to be taken, but there was . . . no tongue involved, no make out session."

Appellant was charged with two specifications of conduct unbecoming an officer and a gentleman in violation of Article 133, UCMJ. He was acquitted of Specification 1, alleging misconduct with the other sailor. Relevant to this appeal, Specification 2 alleged:

> In that [Appellant], U.S. Army, a married man, did, at or near San Antonio, Texas, on or about 1 August 2021, engage in conduct unbecoming an officer and a gentleman, to wit: while knowing that Seaman Recruit (E-1) J.T. was a junior enlisted trainee and a woman who was not his wife, he kissed her cheek and lips.

Contrary to his pleas, a panel of members found Appellant guilty of Specification 2, excepting the word, "cheek," and sentenced him to a reprimand. The convening authority issued a reprimand and otherwise took no action on the findings or sentence. The ACCA summarily affirmed the findings and sentence. *United States v. Gonzalez*, No.

ARMY 20230632, 2024 CCA LEXIS 488 (A. Ct. Crim. App. Nov. 13, 2024) (per curiam) (unpublished).[2]

We granted review to determine "[w]hether Appellant had fair notice that the portions of Specification 2 of the Charge alleging an Article 133 violation for an extramarital kiss constituted conduct that was forbidden and subject to criminal sanction." *United States v. Gonzalez*, 85 M.J. 336 (C.A.A.F. 2025) (order granting review). Finding no error, we affirm the judgment of the ACCA.

## II. Standard of Review

When an accused raises the issue of fair notice for the first time on appeal, we review the forfeited issue for plain error. *United States v. George*, 2025 CAAF LEXIS 577, at *9, 2025 WL 2079302, at *3 (C.A.A.F. July 21, 2025). On plain error review, we must determine whether " '(1) there was error; (2) the error was plain or obvious; and (3) the error materially prejudiced a substantial right of [Appellant].' " *Id.* (alteration in original) (quoting *United States v. Rocha*, 84 M.J. 346, 349 (C.A.A.F. 2024)). " '[T]he failure to establish any one of the prongs is fatal to a plain error claim.' " *United States v. Feliciano*, 76 M.J. 237, 240

---

[2] On appeal to the ACCA, Appellant challenged for the first time not only whether he had fair notice that his conduct was criminal under Article 133, UCMJ, but also whether this specification became "grammatically nonsensical" after the members' findings. The ACCA summarily rejected the fair notice issue, but to remedy the fact that the specification was "no longer in proper grammatical form," the ACCA affirmed "only so much of the guilty finding" as follows:

> In that [appellant], U.S. Army, a married man, did, at or near San Antonio, Texas, on or about 1 August 2021, engage in conduct unbecoming an officer and a gentleman, to wit: while knowing that Seaman Recruit (E-1) J.T. was a junior enlisted trainee and a woman who was not his wife, he kissed her lips.

*Gonzalez*, 2024 CCA LEXIS 488, at *1 n.1 (alteration in original).

(C.A.A.F. 2017) (alteration in original) (quoting *United States v. Bungert*, 62 M.J. 346, 348 (C.A.A.F. 2006)).

### III. Law

"Due process requires 'fair notice' that an act is forbidden and subject to criminal sanction" before a person can be prosecuted for committing that act. *United States v. Vaughan*, 58 M.J. 29, 31 (C.A.A.F. 2003) (citation omitted). "The 'touchstone' of fair notice 'is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal.'" *Rocha*, 84 M.J. at 349 (quoting *United States v. Lanier*, 520 U.S. 259, 267 (1997)). "Potential sources of fair notice may include federal law, state law, military case law, military custom and usage, and military regulations." *United States v. Warner*, 73 M.J. 1, 3 (C.A.A.F. 2013) (citing *Vaughan*, 58 M.J. at 31). "A conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008).

We have long recognized that a " 'higher code termed honor' " holds military officers " 'to stricter accountability' " than enlisted and civilian personnel. *United States v. Tedder*, 24 M.J. 176, 182 (C.M.A. 1987) (quoting *Fletcher v. United States*, 26 Ct. Cl. 541, 563 (1891), *rev'd on other grounds*, 148 U.S. 84 (1891)). Article 133, UCMJ, embodies this standard, providing that "[a]ny commissioned officer, cadet, or midshipman who is convicted of conduct unbecoming an officer and a gentleman shall be punished as a court-martial may direct." In order to obtain a conviction under Article 133, UCMJ, the government must prove that the accused did or omitted to do a certain act, and that under the circumstances this conduct constituted conduct unbecoming an officer. *MCM* pt. IV, para. 90.b.; *see United States v. Brown*, 55 M.J. 375, 382 (C.A.A.F. 2001) (noting that the *MCM* provision defining conduct unbecoming "reflects traditional military law").

" 'The gravamen of the [Article 133, UCMJ,] offense is that the officer's conduct disgraces him personally or brings dishonor to the military profession such as to affect his fitness to command the obedience of his subordinates so as to successfully complete the military mission.' " *United States v. Lofton*, 69 M.J. 386, 388 (C.A.A.F. 2011) (quoting *United States v. Schweitzer*, 68 M.J. 133, 137 (C.A.A.F. 2009)). Conduct unbecoming is "indicated by acts of dishonesty, unfair dealing, indecency, indecorum, lawlessness, injustice, or cruelty." *MCM* pt. IV, para. 90.c.(2).

A determination whether conduct is unbecoming requires a court to take all of the circumstances into consideration. *United States v. Diaz*, 69 M.J. 127, 136 (C.A.A.F. 2010). In determining whether a servicemember had fair notice that conduct violates Article 133, UCMJ, the question is whether "a reasonable military officer would have no doubt that the activities charged in this case constituted conduct unbecoming an officer." *United States v. Frazier*, 34 M.J. 194, 198-99 (C.M.A. 1992) (footnote omitted).

## IV. Discussion

The granted issue asks whether Appellant had fair notice that an extramarital kiss was subject to criminal sanction. Appellant acknowledges that a kiss may constitute fraternization, and he wisely concedes "the uncontroversial proposition that there are sources of fair notice as to fraternization." However, he argues that this case was presented as an extramarital sexual conduct case, and nothing in the UCMJ, military regulation, or military custom provided notice that a kiss may constitute prohibited extramarital sexual conduct. According to Appellant, the Government cannot use a "novel" Article 133, UCMJ, specification to criminalize conduct that "doesn't quite" meet the definition of extramarital sexual conduct prohibited under Article 134, UCMJ, 10 U.S.C. § 934.

Appellant's argument fails for two reasons. First, we reject the premise that the underlying misconduct was extramarital sexual conduct. And second, the Government's charging scheme was not novel. Although the granted issue

refers to the extramarital nature of the charged conduct, the specification as a whole alleged fraternization. Because it is well established that fraternization may be charged as conduct unbecoming an officer,[3] we hold any reasonable officer would have no doubt that fraternizing with a junior enlisted trainee by kissing her on the lips can be sanctioned as conduct unbecoming an officer in violation of Article 133, UCMJ.

## A. The gravamen of the charged conduct is fraternization

As an initial matter, we accept the parties' position at trial that this case involves fraternization. *See George*, 2025 CAAF LEXIS 577, at *9, 2025 WL 2079302, at *4 (adopting on appeal the reasonable interpretation of the charge and specification adopted by the parties at trial). Accordingly, we reject Appellant's contention on appeal that "the processing and litigation of this case below show it was intended as an adultery case, charged like an adultery case, litigated like an adultery case, and the panel members treated it like an adultery case."[4]

The specification alleged that Appellant, "while knowing that Seaman Recruit (E-1) J.T. was a junior enlisted trainee and a woman who was not his wife, . . . kissed her cheek and lips." During an Article 39(a), UCMJ, 10 U.S.C. § 839(a), session to address pretrial motions, the military judge asked the Government to clarify its theory of the case—adultery or fraternization. Trial counsel's response sounded in fraternization:

> Just that the accused, being a Lieutenant Colonel, still on active duty, still subject to the UCMJ, was out on the Riverwalk in San Antonio, Texas, met two persons who told them their status in the Navy being enlisted, junior enlisted, and that he

---

[3] *See MCM* pt. IV, para. 90.c.(2).

[4] At trial, the parties and the military judge referred to extramarital sexual conduct as adultery, as the enumerated Article 134, UCMJ, offense was designated prior to the 2019 edition of the *MCM. MCM* pt. IV, para. 62 (2016 ed.).

> knew that, and regardless of knowing their status
> and knowing that he was a Lieutenant Colonel,
> still decided to engage in the acts as charged on
> the charge sheet.

The defense did not challenge the Government's characterization, voice any concerns, or request a bill of particulars to clarify the Government's theory.

After findings, prior to instructing the panel members on sentencing, the military judge sought confirmation of his understanding that the applicable offense was fraternization, not adultery. Trial counsel affirmed that the most analogous offense was fraternization; trial defense counsel agreed, stating, "[I]t's not adultery." The parties agreed that the maximum sentence was that prescribed for fraternization under Article 134, UCMJ.

We decline to recast the charged conduct on appeal as an extramarital sexual conduct offense by considering only the portions of the specification alleging an extramarital kiss on the lips. "Our test will be: If it looks like fraternization and the parties treated it like fraternization, it is fraternization." *United States v. Arthen*, 32 M.J. 541, 545 (A.F.C.M.R. 1990). Considering the language of the specification in its entirety, the Government's articulated theory of the case, and the defense's agreement that fraternization was the most analogous offense, we conclude the gravamen of the charged conduct is fraternization.

### B. Appellant had fair notice that the charged conduct is prohibited conduct unbecoming an officer

Having concluded this case involves fraternization, we must next determine whether Appellant had fair notice that the alleged fraternization was actionable as conduct unbecoming an officer. We accept Appellant's concession that he had fair notice that fraternization is an actionable offense. We conclude that the *MCM*, Army regulations, and military custom provided fair notice that the charged

conduct was conduct unbecoming. We address each source in turn.[5]

First, fraternization is an enumerated Article 134, UCMJ, offense. *MCM* pt. IV, para. 101.[6] As explained in the *MCM*:

> The gist of this offense is a violation of the custom of the armed forces against fraternization. Not all contact or association between officers and enlisted persons is an offense. Whether the contact or association in question is an offense depends on the surrounding circumstances. Factors to be considered include whether the conduct has compromised the chain of command, resulted in the

---

[5] We need not decide whether any source alone would meet the due process requirement for fair notice because "when addressed together, appellant should reasonably have understood that [his] contemplated conduct was subject to military criminal sanction." *Vaughan*, 58 M.J. at 33.

[6] The elements of fraternization, charged under Article 134, UCMJ, are:

> (1) That the accused was a commissioned or warrant officer;

> (2) That the accused fraternized on terms of military equality with one or more certain enlisted member(s) in a certain manner;

> (3) That the accused then knew the person(s) to be (an) enlisted member(s);

> (4) That such fraternization violated the custom of the accused's Service that officers shall not fraternize with enlisted members on terms of military equality; and

> (5) That, under the circumstances, the conduct of the accused was either: (i) to the prejudice of good order and discipline in the armed forces; (ii) was of a nature to bring discredit upon the armed forces; or (iii) to the prejudice of good order and discipline in the armed forces and of a nature to bring discredit upon the armed forces.

*MCM* pt. IV, para. 101.b.

appearance of partiality, or otherwise under-
mined good order, discipline, authority, or morale.
The facts and circumstances must be such as to
lead a reasonable person experienced in the prob-
lems of military leadership to conclude that the
good order and discipline of the armed forces has
been prejudiced by their tendency to compromise
the respect of enlisted persons for the profession-
alism, integrity, and obligations of an officer.

*MCM* pt. IV, para. 101.c.(1).

Second, Army regulations supply specificity to the stat-
utory prohibition on fraternization by describing prohib-
ited acts and relationships. *See MCM* pt. IV, para. 101.c.(2)
(stating that "[r]egulations, directives, and orders may also
govern conduct between officer and enlisted personnel on
both a Service-Wide and a local basis"). Dep't of the Army,
Reg. 600-20, Personnel-General, Army Command Policy
para. 4-14.*b.* (July 24, 2020) [hereinafter AR 600-20],
warns that "Soldiers of different grades must be cognizant
that *their interactions* do not create an actual or *clearly pre-
dictable perception of undue familiarity* between an officer
and an enlisted Soldier." (Emphasis added.) This prohibi-
tion extends to interactions of soldiers with "personnel of
other military services," *id.* para. 4-14.*a.*, and violations of
the prohibition are punishable under the UCMJ, *id.* para.
4-16. Although the several "examples" of undue familiarity
listed in para. 4-14.*b.* do not specifically mention kissing,
we are persuaded that Appellant's kissing a junior enlisted
member, who was not his wife, on the lips was an "interac-
tion" that "clearly" showed "undue familiarity."[7]

---

[7] Subsequent revisions to AR 600-20 relocated the fraterni-
zation provisions to separate regulations with minimal changes.
*See* Dep't of the Army, Reg. 600-32, Personnel-General, Conduct
Between Soldiers of Different Grades para. 2-2 (Sept. 16, 2024);
*id.* para. 3-1 (governing relationships during recruiting and en-
try-level training); *see also* Dep't of the Army, Pam. 600-35, Per-
sonnel-General, Scenarios for Conduct Between Soldiers of Dif-
ferent Grades para. 2-12 (June 14, 2022).

Third, to the extent the *MCM* and Army regulations leave any doubt as to whether a reasonable officer would have known that kissing a junior enlisted trainee on the lips was subject to sanction, " 'the longstanding customs and usages of the services impart accepted meaning to the seemingly imprecise standards of [Articles] 133 and 134.' " *United States v. Appel*, 31 M.J. 314, 319 (C.M.A. 1990) (plurality opinion) (quoting *Parker v. Levy*, 417 U.S. 733, 743 (1974)). Although fraternization was not enumerated as an offense under the UCMJ until 1984, "[t]he proscription against improper relationships between servicemembers of different ranks, now commonly referred to as fraternization, descended from the Roman ranks." *United States v. Boyett*, 42 M.J. 150, 154-55 (C.A.A.F. 1995) (plurality opinion) (first citing Balthazar Ayala, *Three Books on the Law of War and on the Duties Connected with War and on Military Discipline* (Book The Third) 175, 180 (John Pawley Bate trans., Carnegie Institution 1964) (1582); and then citing William Winthrop, *Military Law and Precedents* 716 (2d ed., Government Printing Office 1920) (1886). This social separation between officers and enlisted personnel has been the custom in this country since its inception. *See United States v. McCreight*, 43 M.J. 483, 485 (C.A.A.F. 1996) ("Since Revolutionary War days, it has been considered unlawful for officers to drink alcohol with enlisted men in public places and to treat them on terms of military equality."). Thus, custom of the service is an additional source of notice to Appellant that fraternization with a junior enlisted sailor is prohibited.[8]

Finally, the *MCM* makes clear that under the circumstances of this case, fraternization is subject to sanction as conduct unbecoming an officer. The *MCM*'s discussion of Article 133, UCMJ, explicitly states that "[t]his article

---

[8] "Other articles of the UCMJ related to the superior-subordinate relationship (Article 89, 90, 91, etc.) reinforce this relatively distinct relationship, as does the physical evidence of separate messes, separate quarters, separate social clubs, etc., readily perceived at any [military] installation." *United States v. Van Steenwyk*, 21 M.J. 795, 804 (N.M.C.M.R. 1985).

includes acts made punishable by any other article, provided these acts amount to conduct unbecoming an officer and a gentleman." *MCM* pt. IV, para. 90.c.(2); *see also United States v. Taylor*, 23 M.J. 314, 318 (C.M.A. 1987) (explaining that "Article 133 is not subject to preemption by other punitive articles").[9] Whether charged as a violation of Article 133, UCMJ, or Article 134, UCMJ, the *MCM*'s discussion of fraternization "constitutes rather explicit notice to servicemembers" that such fraternization is a criminal offense. *Boyett*, 42 M.J. at 156 (Cox, J., concurring). Accordingly, we have no trouble concluding Appellant had fair notice that the charged conduct was unbecoming an officer. Appellant, a married Army officer on the brink of retirement, posed for a photograph of himself kissing a person he had been socializing with and knew to be a Navy seaman recruit on the lips. Not only did Appellant engage in an intimate act specifically barred by AR 600-20, but he did so publicly, creating an actual or clearly predictable adverse impact on discipline, authority, and morale among enlisted personnel who observed his conduct. A reasonable officer would know that such conduct—not simply an extramarital kiss on the lips but an officer's extramarital kiss on the lips of a junior enlisted trainee—is unbecoming an officer.[10] This is so despite Appellant's assertion that the

---

[9] When the government elects to charge fraternization under Article 133, UCMJ, the elements of proof are the same as an Article 134, UCMJ, fraternization charge, "with the additional requirement that the act or omission constitutes conduct unbecoming an officer and gentleman." *MCM* pt. IV, para. 90.c.(2); *see also Boyett*, 42 M.J. at 152 (noting that "by electing to charge fraternization under Article 133 rather than Article 134, the Government must also prove the additional element that the act constitutes conduct unbecoming an officer and gentleman").

[10] *See, e.g.*, *Boyett*, 42 M.J. at 154 (concluding there was "adequate notice to [the] appellant of his potential criminality" under Article 133, UCMJ, when he engaged in an intimate, sexual relationship with an enlisted airman not under his supervision); *United States v. Jefferson*, 21 M.J. 203, 204 (C.M.A. 1986) (per curiam) (affirming guilty findings on specifications alleging fraternization by engaging in sexual intercourse with an enlisted servicemember in violation of Article 133, UCMJ); *United States*

charged conduct did not amount to actionable extramarital sexual conduct.[11]

"Obviously, there will be many gradations of relationships and associations between servicemembers that will not put the parties fairly on notice that the conduct might be inappropriate." *United States v. Rogers*, 54 M.J. 244, 257 (C.A.A.F. 2000). This is not such a case. Where, as in this case, "there is extant such a wealth of tradition and usage, case law, and administrative guidance defining with reasonable specificity the parameters of officer enlisted relationships," *Van Steenwyk*, 21 M.J. at 808-09, we conclude that "[a]ny officer would be on notice that this type of behavior was punishable." *Rogers*, 54 M.J. at 257. Under the circumstances, there was no error, plain or otherwise. Accordingly, we affirm the decision of the ACCA.

---

*v. Page*, 43 M.J. 804, 805 (A.F. Ct. Crim. App. 1995) (affirming a conviction under Article 133, UCMJ, for engaging in an intimate relationship by hugging and kissing an enlisted airman who was married to another servicemember).

[11] *See Frazier*, 34 M.J. at 198 (rejecting the appellant's claim that he was not on notice that activities short of sexual intercourse with an enlisted soldier's wife constituted conduct unbecoming, noting, "Article 133 and its predecessors have never been so narrowly construed"); *United States v. Mann*, 50 M.J. 689, 696 (A.F. Ct. Crim. App. 1999) (noting that "the law is clear that a sexual relationship is not a prerequisite for conviction of fraternization" (first citing *McCreight*, 43 M.J. at 485; and then citing *United States v. Nunes*, 39 M.J. 889, 890 (A.F.C.M.R. 1994))); *United States v. Alcantara*, 39 C.M.R. 682, 685-86 (A.B.R. 1968) (affirming conviction for conduct unbecoming where a married officer made "physical advances" to another woman "in the form of kissing and other acts", explaining that "[t]he very essence" of the charged misconduct was that the appellant was, at that time, married to another, "for obviously, the same conduct on the part of a single man, at least for the most part, not only is not misconduct but is probably recognized by many as an accepted course of action usually leading to wedlock. Thus, the fact of marriage is as important and vital here as it is in an adultery charge" (citing *United States v. Melville*, 8 C.M.A. 597, 25 C.M.R. 101 (1958))).

**V. Judgment**

The decision of the United States Army Court of Criminal Appeals is affirmed.