**UNITED STATES, Appellee,**

v.

**Patrick F. MADERIA III, Captain U.S. Air Force, Appellant.**

No. 68,439.
CMR No. 29141.

U.S. Court of Military Appeals.

Argued Oct. 6, 1993.
Decided Jan. 12, 1994.

For Appellant: *Captain Robert I. Smith* (argued); *Colonel Terry J. Woodhouse* (on

brief); *Lieutenant Colonel Jay L. Cohen and Captain Marc A. Fox.*

For Appellee: *Major Jeffrey C. Linquist* (argued); *Colonel Richard L. Purdon, Colonel Jeffery T. Infelise, Major John H. Kongable* (on brief); *Lieutenant Colonel Thomas E. Schlegel.*

*Opinion of the Court*

SULLIVAN, Chief Judge:

Appellant was tried by a general court-martial at Shaw Air Force Base, South Carolina, on January 3, 1991. Pursuant to pleas of guilty, he was found guilty of using marijuana and two specifications of conduct unbecoming an officer and gentleman. *See* Arts. 112a and 133, Uniform Code of Military Justice, 10 USC §§ 912a and 933, respectively. He was sentenced by the military judge to a dismissal, confinement and forfeiture of $1000 pay per month for 3 months, and a reprimand. This sentence was within the terms of the pretrial agreement, and the convening authority approved it on February 13, 1991. The Court of Military Review affirmed the findings and sentence in an unpublished opinion on May 8, 1992.

■ On December 10, 1992, this Court granted review on the following question of law raised by appellate defense counsel:

WHETHER CHARGE II, CONDUCT UNBECOMING AN OFFICER, FAILS TO STATE AN OFFENSE.

We hold that the challenged specification properly states and the record properly establishes an offense under Article 133. *United States v. Frazier*, 34 MJ 194 (CMA 1992).

Appellant pleaded guilty to and was found guilty of the following three offenses:

CHARGE I: Violation of the UCMJ, Article 112a

Specification: 1: In that [appellant] did, in or near Tucson, Arizona, on divers occasions between about 1 February

1987 and about 30 June 1987, wrongfully use marijuana.

CHARGE II: VIOLATION OF THE UCMJ, ARTICLE 133

Specification 1: In that [appellant] did, in or near Tucson, Arizona, on divers occasions between about 1 February 1987 and about 23 March 1988, publicly and disgracefully associate with Steven L. Canis, a smuggler of illegal drugs, whom the said Captain Patrick F. Maderia knew to be a smuggler of illegal drugs, which conduct, under the circumstances, was conduct unbecoming an officer and a gentleman.

ADDITIONAL CHARGE: VIOLATION OF THE UCMJ, ARTICLE 133

Specification: In that [appellant] did, in or near Tucson, Arizona, on divers occasions between about 1 February 1987 and about 23 March 1988, wrongfully, dishonorably and disgracefully sell to Steven L. Canis, a person whom the said Captain Patrick F. Mederia III knew to be a smuggler of illegal drugs, purported United States Custom flight schedules, surveillance techniques information, and other flight information, which conduct, under the circumstances, was conduct unbecoming an officer and a gentleman.

A stipulation of fact, admitted by the military judge pursuant to the above pleas of guilty, stated:

2. The ACCUSED used marijuana on more than one occasion while assigned to the 23d Tactical Air Support Squadron, Davis–Monthan Air Force Base, Arizona, during the period 1 February 1987 to 31 March 1987. *He took a few "tokes" or puffs off of marijuana joints while attending parties in Tucson, Arizona. He attended the parties at the invitation of STEVEN L. CANIS, known to the ACCUSED to be a drug smuggler, whom the ACCUSED had met at a local gym in Tucson in 1985.* The ACCUSED's use of marijuana was without legal justification or excuse. He was not acting in an undercover capacity pursuant to legitimate law enforcement activity; he was not acting pursuant to medical duties or as part of medical treatment; and he was fully aware of the contraband nature of the marijuana.

3. The ACCUSED first met STEVEN L. CANIS at a local gym in Tucson, Arizona called "Spahr's Gym" in 1985. The ACCUSED, who was nicknamed "Hulk," often went to the gym to lift weights. In early 1987, the ACCUSED learned that MR CANIS, whom he also knew as "STEVE" and "BUFFALO," was a drug smuggler. The ACCUSED learned that MR CANIS smuggled drugs from Mexico into the United States. *During the ACCUSED's last year of assignment at Davis–Monthan Air Force Base, CANIS approached him and asked him to pilot an aircraft for him to smuggle marijuana from Mexico into Arizona. The ACCUSED refused.* Despite his awareness of CANIS' smuggling activities, the ACCUSED publicly associated with him during the period of 1 February 1987 until about 31 March 1987. This behavior in the ACCUSED's unofficial, private capacity, dishonored and disgraced him personally, and seriously detracted from his standing as a commissioned officer of the United States Air Force. His unbecoming conduct was of a material and pronounced nature, and was both morally unfitting and unworthy of the ACCUSED.

4. In addition, the ACCUSED supplied STEVEN L. CANIS with information. Between about 1 February 1987 and 31 March 1987, the ACCUSED supplied STEVE CANIS with purported United States Customs flight schedules, purported surveillance techniques information, and other purported flight information. Two years after he got to know CANIS at "Spahr's Gym," the ACCUSED was approached by CANIS, who offered him up to $5000.00 for each United States Customs flight schedule pertaining to drug interdiction missions which the ACCUSED could produce. On up to five different occasions, the ACCUSED provided CANIS with information purportedly designed to help CANIS avoid detection and interdiction of his flights of mar-

ijuana over the Mexican border into the United States. This "intelligence" covered the purported schedules of AWACS and P-3 aircraft. The ACCUSED created "bogus" information, recorded in his own handwriting, and sold it to CANIS as the "real thing." He received payment each time in cash or gifts. On each occasion, the ACCUSED's sale of purported interdiction information to STEVEN CANIS dishonored and disgraced him personally, and detracted from his standing as an officer. His unbecoming conduct was wrongful, pronounced, and both morally unfitting and unworthy of the ACCUSED.

(Emphasis added.)

---

At trial, appellant pleaded guilty to Charge II and its specification alleging conduct unbecoming an officer and a gentleman in violation of Article 133. He admitted that he "publicly and disgracefully associated with ... a smuggler of illegal drugs whom ... [he] knew to be a smuggler of illegal drugs...." On appeal, he now contends that "mere association" with a drug smuggler is insufficient as a matter of law to constitute this criminal offense. Final Brief at 5.

Such an argument ignores the fact that appellant was not charged with mere association with an illegal drug smuggler. Rather he was charged with such an association "which ..., *under the circumstances,* was conduct unbecoming an officer and a gentleman." (Emphasis added.) Moreover, appellant failed to make any mo-

tion to have this specification made more definite and certain. *See* RCM 906(b)(6), Manual for Courts–Martial, United States, 1984 (motion for bill of particulars). Finally, association with certain persons of ill repute under certain circumstances has long been recognized as a crime under Article 133. *See United States v. Guaglione,* 27 MJ 268, 271–72 (CMA 1988).[1] W. Winthrop, *Military Law and Precedents* 718 n. 54 (2d ed. 1920 Reprint). Accordingly, we must reject appellant's contention that this specification was legally insufficient for failing to state an offense. *See United States v. French,* 31 MJ 57, 61 (CMA 1990) (Sullivan, J., concurring), citing *United States v. Holland,* 12 USCMA 444, 445, 31 CMR 30, 31 (1961), and *United States v. Gaskin,* 12 USCMA 419, 421, 31 CMR 5, 7 (1961). *See also United States v. Norvell,* 26 MJ 477, 480 n. 2 (CMA 1988) ("Appellant's standing to challenge a specification" for the first time "on appeal ... is considerably less than if ... [appellant] had put the Government to its proof." (Citations omitted.)).

The more relevant question before us is whether appellant's association with an illegal drug smuggler as established in the record of trial constituted conduct unbecoming an officer in violation of Article 133. *See also United States v. Frazier,* 34 MJ at 198. In this regard, we note that the record shows that appellant, a military officer, used marijuana with this drug smuggler while attending parties in the civilian community.[2] Moreover, it also shows that he discussed on several occasions ways in

1. Long ago, George Washington, in an official letter of reprimand to Benedict Arnold, commented on the high degree of accountability of military officers for their conduct, as follows: "Our profession," [that of a military officer] is the chastest of all. Even the shadow of a fault tarnishes the lustre of our finest achievements. The least inadvertence may rob us of the public favor, so hard to be acquired. I reprimand you for having forgotten that, in proportion as you have rendered yourself formidable to our enemies, you should have been guarded and temperate in your deportment towards your fellow citizens. Exhibit anew those noble qualities which have placed

you on the list of our most valued commanders. I will myself furnish you, as far as it may be in my power, with opportunities of regaining the esteem of your country. Randall, *Benedict Arnold–Patriot and Traitor* 495 (W. Morrow and Co., New York, 1990). *See generally Parker v. Levy,* 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974).

2. Some overlapping of the charges in this case may have occurred. *See United States v. Timberlake,* 18 MJ 371 (CMA 1984). However, no motion on multiplicity grounds was made in this case. *See United States v. Traeder,* 32 MJ 455, 456 n. 2 (CMA 1991). *See generally United States v. Teters,* 37 MJ 370 (CMA 1993).

which he might assist this drug smuggler in conducting his illegal operations. In our minds "a reasonable military officer would have no doubt that" such drug-related conduct not only undermined his military service's well known efforts to combat drug abuse;[3] *see United States v. Frazier, supra* at 198–99 (footnote omitted), but also demeaned his leadership position as an officer in that military service; *see United States v. Norvell,* 26 MJ at 480.

■ Appellant nevertheless complains that the record shows that at the time of the association, only he knew Steven Canis was an illegal drug smuggler. He asserts that there was no evidence in this case that "anyone else knew" about Mr. Canis' "clandestine activities." Thus, he argues that his private association with Mr. Canis could not expose him to public opprobrium as required by Article 133. Final Brief at 5. We disagree. *See generally United States v. Norvell, supra* at 480.

This is a guilty-plea case where appellant admitted conduct unbecoming an officer by "publicly and disgracefully associa[ting]

with ... a smuggler of illegal drugs." In *United States v. Guaglione,* 27 MJ at 272, we noted that the term " 'public' denotes something that is open or generally known." Thus, use of that term in the challenged specification fairly implies that their association was well known, as was appellant's status as a military officer and Mr. Canis' status as a dealer in illegal drugs. *See generally United States v. Sell,* 3 USCMA 202, 206, 11 CMR 202, 206 (1953). Moreover, appellant without equivocation admitted at trial that his non-official association with Mr. Canis "seriously detracted from ... [his] standing as a commissioned officer of the United States Air Force." Therefore, belated speculation as to the extent of the public's prior knowledge[4] of Mr. Canis' illegal operations is not warranted. *See generally United States v. Harrison,* 26 MJ 474, 476 (CMA 1988) ("Post-trial speculation" on scope of duties of clerk in false-official-statement case need not "be countenanced.").

The decision of the United States Air Force Court of Military Review is affirmed.

Judges COX, CRAWFORD, GIERKE, and WISS concur.

---

3. *See generally United States v. Bickel,* 30 MJ 277 (CMA 1990); *Unger v. Ziemniak,* 27 MJ 349 (CMA 1989); *United States v. Trottier,* 9 MJ 337 (CMA 1980).

4. Clearly Mr. Canis, a civilian, was aware of his own illegal activities at the time of the association. Furthermore, this Court has held that it is also proper to consider whether "someone acquiring such knowledge would tend to view appellant, and thus the officer corps with diminished respect." *United States v. Norvell,* 26 MJ 477, 480 (CMA 1988).