UNITED STATES, Appellee,

v.

Sergeant George M. CYRUS, Jr., 424–15–3603, United States Army, Appellant.

ARMY 9501690.

U.S. Army Court of Criminal Appeals.

16 April 1997.

For Appellant: Captain Eric S. Krauss, JA (argued); Major J. Frank Burnette, JA (on brief); Lieutenant Colonel Michael L. Walters, JA.

For Appellee: Major Virginia G. Beakes, JA (argued); Colonel John M. Smith, JA; Lieutenant Colonel Eva M. Novak, JA (on brief).

Before COOKE, JOHNSTON, and ECKER Appellate Military Judges.

## OPINION OF THE COURT

JOHNSTON, Judge.

Contrary to his pleas, the appellant was found guilty by a military judge sitting as a special court-martial of adultery and wrongful association with known drug dealers in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 (1988)[hereinafter UCMJ]. The convening authority approved the adjudged sentence of a bad-conduct discharge, hard labor without confinement for sixty days, and reduction to Private E1.

The case is before this court under the automatic appeal provisions of Article 66(b), UCMJ, 10 U.S.C. § 866(b) (1988).[1] After careful consideration of the issues raised,[2] we have determined that the findings and sentence should be set aside.

1. Pursuant to an order of this court, oral argument in this case was held at the United States Military Academy, West Point, New York.

2. The appellant asserted four errors:

I.
THE EVIDENCE IS INSUFFICIENT TO SUPPORT THE ADULTERY CONVICTION.

II.
THE MILITARY JUDGE ABUSED HIS DISCRETION TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY ADMITTING HEARSAY STATEMENTS TO ESTABLISH PROOF OF ADULTERY.

III.

## Facts

The appellant was a military police sergeant assigned to Fort Rucker, Alabama. The charges in this case arose from the appellant's off-post, off-duty activities. The evidence against appellant, summarized below, consisted of the testimony of two civilian police officers and a Criminal Investigation Command (CID) investigator.

On 12 June 1995, civilian police narcotics investigators executed a search warrant at an apartment occupied by Ms. H outside of Fort Rucker, Alabama. One of them entered a bedroom during the search, and discovered the appellant and Ms. H, in bed in positions which strongly suggested that they were engaged in sexual intercourse. After the appellant and Ms. H adopted less compromising positions, the civilian police completed the search. They uncovered a "large amount" of crack cocaine in the apartment, including nine pieces of crack cocaine inside a tennis shoe located in a sports bag sitting next to the bed where the appellant and Ms. H were found.

When later offered the opportunity to assist the narcotics officers with their investigation of the cocaine found at Ms. H's apartment, the appellant admitted being there with her, but denied knowing anything about the cocaine. The appellant was not charged with wrongful possession of cocaine by either civilian or military authorities. Two other individuals, however, Bryan D and Earl K, were arrested that same day at the scene. According to the police, they identified the appellant as "the MP man" who was Ms. H's boyfriend, and they claimed that they had played cards with him the night before.

THE FINDING OF GUILTY AS TO SPECIFICATION 3 OF CHARGE I SHOULD BE SET ASIDE BECAUSE IT FAILS TO STATE AN OFFENSE AND IS VIOLATIVE OF APPELLANT'S FIRST AMENDMENT RIGHT TO ASSOCIATION AND FIFTH AMENDMENT RIGHT TO DUE PROCESS.

IV.
THE EVIDENCE IS INSUFFICIENT TO SUPPORT THE CONVICTION FOR CONDUCT PREJUDICIAL TO GOOD ORDER AND DISCIPLINE OR OF A NATURE TO BRING DISCREDIT UPON THE ARMED FORCES.

Three days after the execution of the search warrant, two civilian policemen, a CID agent, and a military police investigator confronted Ms. H outside a laundromat and questioned her about the sexual situation that was discovered during the search of her bedroom. She was "jovial" and willing to talk about the incident. She told them that the appellant was with her, not for any drug activity, but because of their relationship. She explained that she and the appellant were "very close" and had a fulfilling personal and sexual relationship. She slapped one of the policemen on the arm in a joking manner and said, "man, you did this [search] and you interrupted us when it was getting good." She admitted that she and appellant "were involved in sex."

The police officers who conducted the search encountered appellant on several other occasions. On one occasion he told them falsely that he was working for Fort Rucker CID in an undercover capacity and that he would help them work drug cases. On another occasion the police saw the appellant in "one of [the] biggest crack neighborhoods" in town. The police claimed that the appellant "associated with" Kenneth T and Tony C, two convicted drug dealers who were frequently found in that neighborhood. They did not describe the nature of the "association."

Finally, undercover police officers were attempting to buy drugs in front of the run-down house where the appellant was staying. Police had made two drug buys that they recorded on video tape when the appellant arrived. When police asked the appellant why there was a small crowd of people in front of his house, he claimed that he was "giving somebody beer for mowing his grass." The police told him that he needed to "run them off" because all the people were drug dealers. The appellant told the police they could arrest them whenever they wanted, but "just don't mess with Leroy and Phyllis," two of the persons at the location. The appellant assured the police that Leroy and Phyllis were "okay" or "cool," implying that they were not involved in drug trafficking. The police, however, had just purchased cocaine from Leroy and Phyllis and recorded the transaction on videotape.

According to the police, appellant lived in a "drug infested" part of town. The police officers had observed the appellant at Ms. H's residence in his battle dress uniform and Army athletic attire. According to the police, the drug dealers in that area knew that the appellant was a military policeman. Nevertheless, in their view, the drug dealers did not seem concerned that a military law enforcement official might observe their illegal conduct. As a result of their dealings with the appellant, the civilian narcotics officers lost confidence in the integrity and abilities of the military police at Fort Rucker. They also felt that the appellant's presence possibly hindered their drug investigations.

## Law

In reviewing this case under the provisions of Article 66, UCMJ, we may affirm only such findings of guilty and the sentence or part thereof as we find correct in law and fact and which we determine, on the basis of the entire record, should be approved. We may not hold the findings or sentence to be incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the appellant. UCMJ art. 59.

In reviewing this case for legal sufficiency, our test is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Our standard for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses," we ourselves are convinced of the appellant's guilt beyond a reasonable doubt. *United States v. Turner,* 25 M.J. 324, 325 (C.M.A.1987).

## Adultery

The offense of adultery as charged in this case under Article 134, UCMJ, has three elements: (1) that the appellant wrongfully had sexual intercourse with Ms. H; (2) that at the time, the appellant or Ms. H was

married to someone else; and, (3) that, under the circumstances the conduct of the appellant was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

The appellant contends that the military judge abused his discretion by improperly admitting hearsay statements to establish the elements of adultery. We agree.

In order to prove the first and second elements of the offense, trial counsel attempted to call Ms. H to testify. Although she apparently had been near the courtroom on the day of trial, she could not be located when called. When trial counsel was unable to produce Ms. H to testify, he relied upon police testimony. The CID agent testified about Ms. H's comments outside the laundromat three days after the search. He stated that she commented about interrupting her and the appellant "when it was getting good." The agent also said she described her relationship with appellant, and that appellant told her "he was going to leave his wife for her." Other apparently available evidence of appellant's marital status was not introduced on the merits.[3] In spite of a timely objection by defense counsel to the testimony of the CID agent, the military judge admitted comments under the residual hearsay exception of Military Rule of Evidence 804 [hereinafter Mil. R. Evid.].

The residual hearsay rule provides in pertinent part:

(b) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness.

. . . .

(5) Other exceptions. A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the military judge determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative of the point for which it is offered than *any other evidence which the proponent can procure through reasonable efforts;*

and (C) the general purposes of these rules and the interest of justice will best be served by admission of the statement into evidence.

Mil. R. Evid. 804(b)(5)(emphasis added). By its very terms, the rule indicates that all components must be present before the exception is applicable and the evidence is admitted. These requirements are intended to insure that only trustworthy statements having high probative value and necessity may qualify for admission under the hearsay exception.

The legislative history of the virtually identical residual hearsay provisions contained in Federal Rules of Evidence 803(24) and 804(b)(6) state that the "exceptions will be used very rarely, and only in exceptional circumstances." 1974 U.S.C.C.A.N. 7066. The congressional committee responsible for those rules did not intend to establish a broad license for trial judges to admit hearsay statements that did not fall within one of the other enumerated exceptions contained in Federal Rules of Evidence 803 or 804. In addition, the legislative history specifies that the trial judge should state on the record "the special facts and circumstances which, in the court's judgment, indicates that the statement has a sufficiently high degree of trustworthiness and necessity to justify its admission." *Id.* While the intent of Congress as evidenced in these legislative history provisions is not specifically applicable to the corresponding military rules, these views may not be disregarded. Article 36, UCMJ, specifies that the military rules shall generally follow the principles of law and rules of evidence applicable in the federal courts. Indeed, the drafters of the military rules of evidence clearly intended that "military evidentiary law should echo the civilian federal law to the extent practicable." Mil. R. Evid. analysis at A 22–59. We see no reason to depart from the federal standard in this case.

The first requirement of the residual hearsay rule is that the evidence have "equivalent circumstantial guarantees of trustworthiness" as the enumerated hearsay exceptions. In his proffer to the military judge, trial

---

**3.** We note that during the sentencing phase of trial the government introduced the appellant's

DA Form 2–1, dated July 1995, which reflected that the appellant was married.

counsel pointed to the general circumstances of the statement to suggest trustworthiness: Ms. H consented to talk with the police; she was in a public place outside a laundromat, rather than in the custody of the police; she was in a jovial mood and spoke freely with them; and, she was subject to an Alabama statute that made lying to police officers a criminal offense.[4] The government produced only one witness who described in very general terms the circumstances under which Ms. H's comment about the appellant's plans to leave his wife was obtained. The military judge failed to note on the record the basis for his conclusion that the comment by Ms. H met the first requirement of the residual hearsay rule.

In *United States v. Ureta*, 44 M.J. 290, *cert. denied*, — U.S. —, 117 S.Ct. 692, 136 L.Ed.2d 615 (1997), the Court of Appeals for the Armed Forces stated, with respect to the residual hearsay exception, "[s]tatements elicited by law enforcement officials are regarded with caution but are not *per se* inadmissible." *Ureta*, 44 M.J. at 296 (emphasis in original). The court listed several factors to be considered in assessing trustworthiness of hearsay statements, including: "spontaneity, consistent repetition, mental state of the declarant, and lack of motive to fabricate. . . . In addition, use of open-ended, non-leading questions; repeated emphasis on truthfulness; and declarations against the declarant's interest ... tend to support trustworthiness of the declaration." *Id.* (citations omitted).

■ We have examined the proffered evidence and find nothing in the "peculiar circumstances" surrounding the officer's testimony about Ms. H's statement that provides strong circumstantial guarantees of trustworthiness. Although she was described as relaxed and jovial, clearly the police initiated the conversation. No evidence establishes that she was impressed with the need to tell

the truth. Moreover, nothing indicates how long the questioning took or what she was asked. Under these circumstances we are unable to distinguish Ms. H's statements from those made to police in the course of most investigations.

■ The military judge also failed to address the third component of the residual hearsay rule to determine, how Ms. H's statement about the appellant's marital state was more probative on the point than any other evidence the government could have produced through reasonable efforts. By carefully exploring other possibly more reliable sources for the same information, both necessity and trustworthiness may be ensured.

The appellant's marital status could have been proven at trial by introducing various types of evidence, including: (a) his military personnel records (Mil. R. Evid.803(6) Records of regularly conducted activity); (b) a record of the marriage and corresponding absence of a divorce decree (Mil. R. Evid. 803(9) Records of vital statistics; Mil. R. Evid. 803(12) Marriage, baptismal, and similar certificates; and, Mil. R. Evid. 803(10) Absence of public record or entry); (c) a copy of the regularly kept records of a religious organization (Mil. R. Evid.803(11) Records of religious organizations); and, (d) reputation testimony concerning the appellant's marriage (Mil. R. Evid.803(19) Reputation concerning personal or family history).

■ Rather than resorting to one or another of these eminently reasonable methods of proving beyond a reasonable doubt that the appellant was married at the time of the search, the government chose to rely upon hearsay within hearsay testimony from a police officer about a comment made by the paramour reporting what she said the appellant said to her.[5] The government offered no

---

4. The military judge was not asked to take judicial notice of the state statute that may have been applicable to the conversation. Thus, we are unable to determine, as a matter of law, whether statements made to an Alabama police officer in his jurisdiction are more likely to be truthful than comments made to any other person.

5. While Mil. R. Evid. 805 does not exclude hearsay within hearsay if each part of the combined statements conforms to an exception to the hearsay rule, the evidence in this case does not meet that standard. The appellant's statement to the paramour that he "was going to leave his wife for her" does not conform to any hearsay exception. Ms. H's comment to the police likewise

explanation that would conform to the policy reasons behind the residual hearsay exception for this choice. We conclude, therefore, that the military judge abused his discretion in holding that the statements met the required standard of trustworthiness and necessity under the residual hearsay rule. Under the circumstances of this case, the error was not harmless.[6]

## Wrongful Association

In this case the appellant was charged under Article 134, UCMJ, with wrongfully associating with drug dealers from January to August 1995. The specification, in pertinent part, alleges that he did

willfully and wrongfully appear at and visit residences known by the accused to contain, for use and distribution, illegal drugs, and on said occasions, the accused associated with individuals the accused knew to use and distribute illegal drugs, which said conduct under the circumstances was prejudicial to good order and discipline in the Armed Forces and was of a nature to bring discredit upon the Armed Forces.

The appellant objects to his conviction under the specification on three separate grounds: (1), that the specification fails to state an offense; (2), that it violates his First Amendment right to association and Fifth Amendment right to due process; and, (3), that the evidence at trial was insufficient to support the conviction.

In military practice a specification must directly, or by clear implication, allege every essential element of the offense. *See United States v. Brecheen*, 27 M.J. 67 (C.M.A.1988). Article 134, UCMJ, in pertinent part, has two statutory elements: behavior or conduct, that, under the circumstances, is prejudicial to good order and discipline, or is service discrediting, or both. *See United States v. Sadinsky*, 14 U.S.C.M.A. 563, 34 C.M.R. 343, 1964 WL 5026 (C.M.A.1964). The wrongfulness of the conduct is determined by all the attendant circumstances of the case. *United States v. Maderia*, 38 M.J. 494 (C.M.A. 1994).

In this case the appellant was not charged with merely appearing at or visiting residences known to contain drugs. He was charged with doing so under wrongful circumstances. Likewise, he was not charged with merely associating with drug dealers and users—the specification alleges that he did so under circumstances that were service discrediting and prejudicial to good order and discipline. Accordingly, we are satisfied that the specification meets the minimum technical requirements to allege an offense.[7]

Although we have determined the specification in this case alleges an offense, such a charge also raises significant and complex issues concerning a soldier's freedom of association and due process rights. We need not address these here or define in what circumstances Article 134, UCMJ, may be

does not come with any enumerated hearsay exception. In addition, the circumstances under which Ms. H's comment was made do not show "equivalent circumstantial guarantees of reliability" Finally, the military judge did not state, and it is not evident to us from the record, why it was necessary under the general purpose of the rules and in the interests of justice to admit Ms. H's statement under the residual hearsay rule.

6. The remaining evidence as to the first element of adultery consisted of the testimony of the police officer who discovered appellant and Ms. H in bed during the search of Ms. H's house. That officer testified he did not actually see penetration. The remaining evidence as to the second element of adultery consisted of testimony from a police officer, who said that about eight months before the search, appellant had told him that he (appellant) had a wife.

Although this testimony constituted some evidence from which the fact finder might have found these two elements, we cannot say that this evidence was so strong that the erroneous admission of the hearsay evidence discussed above was harmless.

7. We note that the appellant failed to make any motion to have this specification made more definite and certain. *See* R.C.M. 906(b)(6)(motion for bill of particulars). The purposes of a bill of particulars are to inform the accused of the nature of the charge with sufficient precision to enable trial preparation, to avoid or minimize the danger of surprise at the time of trial, and to enable the accused to plead the acquittal or conviction in bar of another prosecution for the same offense. *See* R.C.M. 906(b)(6) discussion.

violated by "association" with others who may be engaged in criminal acts.[8] In this case we are not convinced beyond a reasonable doubt that the government has proven the allegations. We are not satisfied that the appellant knew illegal drugs were at the residence that he visited or that he knew that the individuals with whom he associated were using or distributing drugs. Furthermore, whatever degree of "association" may be necessary to be labeled criminal, here the government proved no more than that the appellant was acquainted with certain persons whom the *police* reasonably believed to be drug traffickers. That association, while ill-advised under the circumstances shown here, was not proven to be wrongful.

The remaining errors raised personally by the appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), are without merit.

The findings of guilty and the sentence are set aside. A rehearing on Specification 1 of Charge I may be ordered by the same or a different convening authority. If the convening authority determines that a rehearing on Specification 1 of Charge I is impracticable, he may dismiss the charge.

Chief Judge COOKE and Judge ECKER concur.

---

**8.** *See generally Maderia*, 38 M.J. 494. In *Maderia*, the Court of Military Appeals upheld an officer's conviction under Article 133, UCMJ, for "publicly and disgracefully associat[ing] with . . . a smuggler of illegal drugs." Captain Maderia pleaded guilty, and admitted that: he knew the person was a drug smuggler; he smoked marijuana on more than one occasion with the drug smuggler; and he discussed on several occasions ways in which he might assist the drug smuggler in his illegal operations. Although, we do not squarely address the issue in the case before us, it would seem that similar charges under Article 134, UCMJ, against a noncommissioned officer, would impose a similar burden on the government.