*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

**UNITED STATES**
Appellee

**v.**

**Paul D. VOORHEES, Major**
United States Air Force, Appellant

**No. 18-0372**
Crim. App. No. 38836 (reh)

Argued February 21, 2019—Decided June 27, 2019

Military Judges: Natalie D. Richardson (trial) and
Mark F. Rosenow (sentence rehearing)

For Appellant: *Terri R. Zimmermann*, Esq. (argued); *Major Jarett Merk* and *Jack B. Zimmermann*, Esq. (on brief).

For Appellee: *Captain Anne M. Delmare* (argued); *Colonel Julie L. Pitvorec*, *Lieutenant Colonel Joseph Kubler*, and *Mary Ellen Payne*, Esq. (on brief).

Judge SPARKS delivered the opinion of the Court, in which Chief Judge STUCKY, and Judges RYAN, OHLSON, and MAGGS, joined.

————————

Judge SPARKS delivered the opinion of the Court.

A panel of officer members convicted Appellant, contrary to his pleas, of five specifications of conduct unbecoming an officer and a gentleman and one specification of sexual assault in violation of Articles 133 and 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 933, 920 (2012). The panel acquitted Appellant of one specification of conduct unbecoming an officer and a gentleman. The members sentenced Appellant to forfeiture of all pay and allowances, three years of confinement, and dismissal. The convening authority approved the sentence as adjudged.

The United States Air Force Court of Criminal Appeals set aside Appellant's Article 120, UCMJ, conviction for factual insufficiency, but affirmed his remaining convictions and ordered a sentence rehearing. *United States v. Voorhees*, No. ACM 38836, 2016 WL 7028962, at \*2, 2016 CCA LEXIS 752, at \*2 (A.F. Ct. Crim. App. Nov. 23, 2016) (unpublished).

A military judge sitting alone conducted the sentence rehearing for the remaining five Article 133, UCMJ, convictions, and sentenced Appellant to a dismissal and a reprimand. The convening authority approved the dismissal.

We granted review to determine: (1) whether trial counsel's final arguments on the merits contained prejudicial prosecutorial misconduct and (2) whether the military judge erred when she failed to instruct the panel on a mens rea for Article 133, UCMJ.[1] We now hold neither issue warrants relief.

## Background

The lower court adequately summarized the facts underlying Appellant's offense as follows:

> Appellant's convictions for conduct unbecoming are rooted in the sexual comments and actions he directed toward subordinate female Airmen with whom he deployed or went on temporary duty assignments (TDY) on different occasions. Appellant is an EC–130 pilot who performed duty as an aircraft commander and a co-pilot during several deployments to Afghanistan. While TDY, deployed, and transiting to and from deployment, Appellant used electronic communications to make a variety of comments with sexual undertones to a Senior Airman …, a Technical Sergeant …, and a First Lieutenant …. The comments included telling the Senior Airman he wanted to take her back to his hotel room, asking all three individuals if they cheated on their husband or significant other, and asking two of them about the undergarments they were wearing.

*Voorhees*, 2016 WL 7028962, at \*2, 2016 CCA LEXIS 752, at \*3. Appellant was also convicted of conduct unbecoming an officer for giving Senior Airman HB a back massage. At the time of this massage, "Appellant served as the aircraft commander for an eight-member aircrew where [Senior Airman] HB was the only female and the junior member of

---

[1] Appellant also petitioned this Court to review the mens rea issue through a failure to state an offense analysis, and asked us to decide it separately from the instructional error issue. We thought it sufficient to address mens rea solely through our review of the military judge's instructions.

the crew." *Voorhees*, 2016 CCA LEXIS 752, at *4, 2016 WL 7028962, at *2.

## Discussion

### I. Prosecutorial Misconduct

Appellant alleges trial counsel's findings and rebuttal arguments contained numerous instances of prosecutorial misconduct, ranging from personal attacks on Appellant and his defense counsel, to improper vouching and expressing personal opinions.

We review prosecutorial misconduct and improper argument de novo and where, as here, no objection is made, we review for plain error. *United States v. Andrews*, 77 M.J. 393, 398 (C.A.A.F. 2018). "The burden of proof under plain error review is on the appellant." *Id.* (citing *United States v. Sewell*, 76 M.J. 14, 18 (C.A.A.F. 2017)). "Plain error occurs when (1) there is error, (2) the error is clear or obvious, and (3) the error results in material prejudice to a substantial right of the accused." *Id.* at 401 (internal quotation marks omitted) (quoting *United States v. Fletcher*, 62 M.J. 175, 179 (C.A.A.F. 2005)). Thus, we must determine: (1) whether trial counsel's arguments amounted to clear, obvious error; and (2) if so, whether there was "a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *United States v. Lopez*, 76 M.J. 151, 154 (C.A.A.F. 2017) (internal quotation marks omitted) (quoting *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016)); *see also United States v. Tovarchavez*, __ M.J. __ (8) (C.A.A.F. 2019) (explaining that, where nonconstitutional error is forfeited, the *Molina-Martinez* test should be applied).

As we have explained repeatedly:

> Trial prosecutorial misconduct is behavior by the prosecuting attorney that oversteps the bounds of that propriety and fairness which should characterize the conduct of such an officer in the prosecution of a criminal offense. Prosecutorial misconduct can be generally defined as action or inaction by a prosecutor in violation of some legal norm or standard, *e.g.*, a constitutional provision, a statute, a Manual rule, or an applicable professional ethics canon. Prosecutors have a duty

> to refrain from improper methods calculated to produce a wrongful conviction.

*Andrews*, 77 M.J. at 402 (internal quotation marks omitted) (quoting *Fletcher,* 62 M.J. at 178, *United States v. Meek,* 44 M.J. 1, 5 (C.A.A.F. 1996, and *United States v. Berger*, 295 U.S. 78, 88 (1935)).

As trial counsel tried to establish his bona fides with the court members during voir dire, he introduced himself as an attorney of considerable experience and gravitas:

> I'm Captain Josh Traeger. I'm a senior trial counsel assigned to Peterson Air Force Base. In that capacity I travel around the world, between 200 and 250 days a year, prosecuting the Air Force's most serious cases.
>
> ….
>
> … And on behalf of the Unites State [sic] of America, I am happy to be prosecuting this case.

Despite his self-described expertise, trial counsel's findings and rebuttal arguments were riddled with egregious misconduct, much of which amounted to clear, obvious error. We are most concerned with trial counsel's: (1) personal attacks on defense counsel; (2) personal attacks on Appellant; and (3) expressing personal opinions, bolstering, and vouching. We address each in turn.

*Personal Attacks on Defense Counsel*

First, trial counsel accused defense counsel of "misplaced lying," and made the defense theory of the case seem fantastical, saying "defense counsel's imagination is not reasonable doubt." Both statements amount to clear, obvious error.[2]

---

[2] The Government contends trial counsel's attack on defense counsel was simply challenging "defense counsel's misrepresentation of the record and the law during closing argument." If the defense counsel mischaracterizes the evidence or misstates the law, the trial counsel may object, ask the military judge for an instruction, and explain the mischaracterization during rebuttal argument. But he may not label the defense counsel a liar or fabricator, nor may he engage in any argument amounting to prosecutorial misconduct. *See Fletcher*, 62 M.J. at 181.

"[I]t is … improper for a trial counsel to attempt to win favor with the members by maligning defense counsel," including accusing the defense counsel of fabrication. *See Fletcher*, 62 M.J. at 181–82 (citations omitted). As *Fletcher* warned, but trial counsel failed to heed, when trial counsel maligned defense counsel, he risked both turning the trial into a "popularity contest" and influencing the members such that they may not have been able to objectively weigh the evidence against Appellant. *Id.* "Rather than deciding the case solely on the basis of the evidence presented, as is required, the members [could have been] convinced to decide the case based on which lawyer they like[d] better." *Id.* (internal quotation marks omitted) (quoting *United States v. Young*, 470 U.S. 1, 18 (1985)). Indeed, the panel could have been so swayed by trial counsel's disparaging remarks that they "believe[d] that the defense's characterization of the evidence should not [have been] trusted, and, therefore, that a finding of not guilty would [have been] in conflict with the true facts of the case." *Id.* (internal quotation marks omitted) (quoting *United States v. Xiong*, 262 F.3d 672, 675 (7th Cir. 2001)). Trial counsel's attacks on defense counsel were all the worse given that they "were gratuitous and obviously intended to curry favor with the members. [He] drew … comparisons between [his] style and that of defense counsel," framing defense counsel as an overly imaginative liar, while contrasting himself as a highly experienced, well-trained prosecutor.[3] *Id.* at 182.

> The trial counsel's obvious attempts to win over the [panel] by putting [him]self in a favorable light while simultaneously making defense counsel look like a [liar] who would say anything to get his client off the hook were plainly improper. The trial counsel erroneously encouraged the members to

---

[3] As above, during voir dire, trial counsel referred to himself as "a senior trial counsel" who "travel[s] around the world, between 200 and 250 days a year, prosecuting the Air Force's most serious cases." He made a statement with similar implications as he began his rebuttal argument, saying "Members, I don't—I don't go TDY and leave my family 250 days a year to sell you a story. I don't do that." Together, these statements may have falsely suggested to the panel that trial counsel was so experienced he could select and try only winning cases.

> decide the case based on the personal qualities of counsel rather than the facts. Not only did [his] comments have the potential to mislead the members, but they also detracted from the dignity and solemn purpose of the court-martial proceedings.

*Id.*

### Personal Attacks on Appellant

Next, trial counsel also repeatedly attacked Appellant's character, calling him "perverted," "sick," and a "narcissistic, chauvinistic, joke of an officer." At one point, trial counsel went so far as to describe Appellant as, "[n]ot an officer, not a gentleman, but a pig." Later, trial counsel stressed this theme further, adding, "Disgusting. Disgusting. Deplorable. Degrading. That's the nature of the conduct that the accused committed. That's the nature of this man."[4] These attacks on Appellant also amount to clear error. *See Andrews*, 77 M.J. at 402 (holding trial counsel's references to the accused as a liar and Don Juan to be error).

"Disparaging comments are also improper when they are directed to the defendant himself." *Fletcher*, 62 M.J. at 182. Trial counsel's word choice served as "more of a personal attack on the defendant than a commentary on the evidence." *Id.* at 183. "[S]uch conduct is inconsistent with the duty of the prosecutor to 'seek justice, not merely to convict.'" *Id.* at 182 (quoting *United States v. White*, 486 F.2d 204, 206 (2d Cir. 1973)). Trial counsel had only to demonstrate that Appellant violated the UCMJ—not that he was perverted, deplorable, disgusting, chauvinistic, narcissistic, or a pig. Nor was it necessary for trial counsel to repeat these insults throughout his argument; in doing so, trial counsel risked unduly inflaming the passions of the panel. *See United States v. Clifton*, 15 M.J. 26, 29, 30 (C.M.A. 1983) ("It is axiomatic that a court-martial must render its verdict solely on the basis of the evidence

---

[4] While it was error for trial counsel to use these adjectives to disparage Appellant, it was not error for the trial counsel to use these adjectives to describe Appellant's conduct. *See generally Fletcher*, 62 M.J. at 182 (explaining that disparaging comments are improper *when they amount to a personal attack, directed at the accused*; suggesting they do not otherwise amount to misconduct).

presented at trial" and "it is improper for counsel to seek unduly to inflame the passions or prejudices of the court members." (citations omitted)).

*Expressing Personal Opinions, Bolstering, and Vouching*

Trial counsel also improperly expressed his personal opinion about Appellant's guilt, utilized personal pronouns, bolstered his own credibility, and vouched for government witnesses. While a prosecutor may argue that the evidence establishes an accused's guilt beyond a reasonable doubt, he is prohibited from expressing his personal opinion that the accused is guilty. *See Young*, 470 U.S. at 7.

Trial counsel also made the following statement during his closing argument: "And here's where attention to detail is important. Here's really where the attention to detail—and I've been doing this a long time. I've been trying cases a long time and I've quickly learned that attention to detail is as important as any other skill in the courtroom."

And during rebuttal:

- "Technical Sergeant [BR] is an outstanding airman; an outstanding noncommissioned officer in the United States Air Force."

- Referring to a Government witness's testimony: "That was his perception. That was the truth."

- "And if there is any doubt in your mind as to that point or the quality of the United States evidence on this charge, rely entirely on Senior Airman [HB's] credibility. Hang your hat there, because you can. Because that airman is credible. She testified credibly; she told you what happened to her."

- "[Senior Airman HB's] not lying. It's the truth. It's what happened."

- "Members, I don't—I don't go TDY and leave my family 250 days a year to sell you a story. I don't do that. And I don't stand up here and try to appeal to your emotions. I think I made that clear in talking about the government's presentation of evidence."

- "But I'm not going to apologize for becoming emotional when talking about a Major who sexually assaulted a Senior Airman. I'm not going to apologize for that."

- "[W]e win. Clearly."

- *"I know* that the defense counsel's imagination … is not reasonable doubt." (Emphasis added.)

- "I'm not in the business of convicting innocent people, but this man is guilty."

- Appellant is "without a doubt … guilty."

These statements are all clear and obvious error.

From voir dire forward, trial counsel tried to convince the members to convict based on his purported integrity, credibility, and experience as an accomplished prosecutor, and vouched for the credibility of his witnesses, rather than the evidence presented.

> The prosecutor's vouching for the credibility of witnesses and expressing his personal opinion concerning the guilt of the accused pose two dangers: such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.

*Young*, 470 U.S. at 18–19; *see also Fletcher*, 62 M.J. at 180 (explaining that "use of personal pronouns in connection with assertions that a witness was correct or to be believed" is improper).

*Prejudice*

Although trial counsel's misconduct amounted to grievous error, Appellant fails to establish prejudice. "In assessing prejudice, we look at the cumulative impact of any prosecutorial misconduct on the accused's substantial rights and the fairness and integrity of his trial." *Fletcher*, 62 M.J. at 184 (citation omitted). "We weigh three factors to determine whether trial counsel's improper arguments were prejudicial: '(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction.'" *Andrews*, 77 M.J. at 402 (quoting *Sewell*, 76 M.J. at 18). Under this test, Appellant has the burden to prove that there is a "reasonable probability that, but for the error, the outcome

of the proceeding would have been different." *Lopez*, 76 M.J. at 154 (internal quotation marks omitted) (citation omitted). Because Appellant failed to demonstrate that trial counsel's misconduct was "so damaging" as to call into question whether the members convicted Appellant on the basis of the evidence alone, we cannot reverse here. *Sewell*, 76 M.J. at 18 (internal quotation marks omitted) (citation omitted); *see also Andrews*, 77 M.J. at 402 (quoting *Sewell*, 76 M.J. at 18) ("[T]he third factor [alone] may so clearly favor the government that the appellant cannot demonstrate prejudice." (alterations in original)).

As indicated above, trial counsel's improper argument was severe. The misconduct was sustained throughout argument and rebuttal, occurring with alarming frequency. *See Fletcher*, 62 M.J. at 184 (listing "the raw numbers—the instances of misconduct as compared to the overall length of the argument," as well as its persistence throughout argument, as two "*Fletcher* factors" to consider when determining the severity of prosecutorial misconduct). Its persistence throughout final arguments was aggravated by the military judge's total failure to offer any curative instructions. *See id.* (listing "whether the trial counsel abided by any rulings from the military judge" as another "*Fletcher* factor").

Despite the severity of trial counsel's misconduct and the absence of curative measures, however, several other factors militate against finding prejudice. First, defense counsel's failure to object to any of the prosecutorial misconduct is "some measure of the minimal impact of [the] prosecutor's improper argument." *United States v. Gilley*, 56 M.J. 113, 123 (C.A.A.F. 2001) (internal quotation marks omitted) (citation omitted). In *Andrews* we warned defense counsel that failing to object to prosecutorial misconduct "may give rise to meritorious ineffective assistance of counsel claims." 77 M.J. at 404. In this case, the record contains some indication that defense counsel's failure to object may have been a "tactical decision" made as part of his case strategy, rather than a sign of ineffectiveness. *See Darden v. Wainwright*, 477 U.S. 168, 182 (1986) (finding no prejudice from prosecutorial misconduct where a defense counsel made "tactical decision[s]" in case strategy). After standing

by and allowing trial counsel's improper argument to proceed, defense counsel told the panel that trial counsel's argument was merely an emotional appeal, made because the Government's case was weak. He described trial counsel's argument as "theatrics," performed as a product of:

> a lesson that's taught at law schools across the country and in the military advocacy courses. And it is this: if you have the facts, argue the facts. If you have the law, argue the law. If you have neither, then literally the lesson is to pound your fist and try to appeal to the emotions of the panel.

Defense counsel's argument explains why he acquiesced to trial counsel's improper argument—not because he was ineffective, but because he wanted trial counsel to make a spectacle of himself. Defense counsel sought to "plac[e] … the prosecutors' comments and actions in a light that was more likely to engender strong disapproval than result in inflamed passions against" Appellant. *Darden,* 477 U.S. at 182. Put simply, in the context of the entire court-martial, trial counsel's arguments were unlikely to prejudice the panel against Appellant. This is especially true given the composition of the panel, which leads to our next point.

The panel at Appellant's court-martial was comprised of colonels and lieutenant colonels. As senior officers, these individuals were uniquely situated to assess whether Appellant's conduct was unbecoming under Article 133, UCMJ. *See* Article 25(d)(2), UCMJ, 10 U.S.C. § 825(d)(2) (2012) (requiring that the convening authority detail officers "best qualified for the duty by reason of age, education, training, experience, length of service, and judicial temperament" to serve as panel members). After all, these members too were bound by the *Manual for Courts-Martial, United States* (*MCM*), and required by Article 133, UCMJ, to act honorably, gracefully, and decently, as officers and gentlemen. *See MCM* pt. IV, para. 59.c.(2) (discussing the traits expected of commissioned officers). Trial counsel's arguments were thus unlikely to impede these experienced

officers' ability to recognize conduct unbecoming and weigh the evidence against Appellant.[5]

In addition to defense counsel's tactical acquiescence and the members' unique understanding of the offense charged, the evidence that Appellant violated Article 133, UCMJ, "so clearly favor[s] the government that [A]ppellant cannot demonstrate prejudice." *Sewell*, 76 M.J. at 18. To have convicted Appellant of Article 133, UCMJ, the panel must have found:

1.  That the accused did or omitted to do certain acts; and

2.  That, under the circumstances, these acts or omissions constituted conduct unbecoming an officer and gentleman.

*MCM* pt. IV, para. 59.b. (2016 ed.).[6] In the instant case, the acts charged in the first element of each specification alleged Appellant acted sexually inappropriately toward his subordinates. In one specification, the acts element alleged that Appellant gave Senior Airman HB a back massage. In the other four specifications, the acts element alleged Appellant made inappropriate comments to various subordinates. "Regardless of trial counsel's improper arguments, there was ample evidence in support of" Appellant's convictions. *Andrews*, 77 M.J. at 403. Appellant conceded that he gave Senior Airman HB a back massage when he argued she consented to the massage as part of his defense to the Article 120, UCMJ, offense. Each of the other

---

[5] In fact, defense counsel simply left it to the members to decide whether Appellant's conduct qualified as conduct unbecoming, arguing as follows: "[I]t's your call as to whether or not those comments were just inappropriate or they went way over the top. I'm not going to tell you one way or the other." "Do those charged words … rise to the level to be a … federal crime? Is it inappropriate, distasteful, or is it way over the top?… But that's for you to decide when you go back there and deliberate."

[6] Because the lower court set aside Appellant's Article 120, UCMJ, conviction, we only analyzed the weight of the evidence pertaining to the Article 133, UCMJ, offenses. Even if trial counsel's argument swayed the panel to wrongfully convict Appellant of violating Article 120, UCMJ, the evidence as to the Article 133, UCMJ, specifications was so strong that Appellant cannot demonstrate prejudice. *Fletcher*, 62 M.J. at 184; *Sewell*, 76 M.J. at 18.

four specifications was supported by compelling in-court testimony or documented with physical evidence in the form of text messages.

Accordingly, Appellant's court-martial was neither perfect, nor fundamentally unfair. *See Darden*, 477 U.S. at 183 (affirming the lower court's finding that the appellant's "trial was not perfect … but neither was it fundamentally unfair" (internal quotation marks omitted) (citation omitted)). Although trial counsel's conduct reveals a lack of practical legal skills and a level of courtroom etiquette far below that which we expect of military officers, judge advocates, and all experienced trial counsel, we are "confident that the members convicted the appellant on the basis of the evidence alone." *Fletcher*, 62 M.J. at 184. "There was, therefore, no prejudice to Appellant's substantial rights." *Andrews*, 77 M.J. at 403.

### A Note on Prosecutorial Misconduct

Although the law precludes us from finding plain error, trial counsel's performance in this case was not one we would expect from any lawyer, let alone a "senior" trial counsel.

In every case, and especially a case alleging unbecoming conduct, trial counsel should take care to remember that they too are military officers and should conduct themselves accordingly. In this case, as he attempted to sway the members to convict Appellant of conduct unbecoming pursuant to Article 133, UCMJ, trial counsel himself approached the line of indecorum. Attacking one's opposing counsel is as unacceptable as launching ad hominem attacks on the accused in open court. In our view, the token trait of a good prosecutor is the ability to be adversarial without being hostile, but here, unfortunately, trial counsel was openly hostile and petty, leaving propriety and good advocacy at the courtroom door.[7]

---

[7] The Government's poor decision-making in this case was not limited to the trial level. In its brief, the Government acknowledged that "[d]isparaging comments directed at an accused can be improper," but argued that "[i]n this case, trial counsel's comments were a reasonable inference from the evidence admitted at trial, and not outside the norms of fair comment in a

Trial counsel, however, was not the sole attorney at fault during Appellant's court-martial. As we admonished in *Andrews*, "Military judges are neither mere figurehead[s] nor are they umpire[s] in a contest between the Government and accused;" they too have a "*sua sponte* duty to [e]nsure that an accused receives a fair trial." 77 M.J. at 403–04 (alterations in original) (internal quotation marks omitted) (citations omitted). The military judge in Appellant's case simply allowed trial counsel to ramble on with his improper argument. Similarly, although defense counsel's failure to object appears to have been a conscious and tactical choice in the instant case, we remind all defense counsel they "owe[s] a duty to the[ir] client[s] to object to improper arguments early and often." *Id.* at 404.

This case aside, the consistent flow of improper argument appeals to our Court suggests that those in supervisory positions overseeing junior judge advocates are, whether intentionally or not, condoning this type of conduct. As superior officers, these individuals should remind their subordinate judge advocates of the importance of the prosecutor's role within the military justice system and should counsel them to "seek justice, not merely to convict." *Fletcher*, 62 M.J. at 182 (internal quotation marks omitted) (citation omitted).

"Every attorney in a court-martial has a duty to uphold the integrity of the military justice system," and multiple experienced attorneys failed to do so here. *Andrews*, 77 M.J. at 404.

---

court-martial where the appellant was accused of conduct unbecoming of an officer." Brief for the Government at 19, *United States v. Voorhees*, No. 18-0372 (C.A.A.F. Jan. 15, 2019). Appellate counsel repeated this sentiment at oral argument. We find it deeply troubling that experienced appellate attorneys persistently argued that it is within "the norms of fair comment" for a trial counsel to refer to an accused as a "pig," "a pervert," and "a joke of an officer."

## II. Article 133, UCMJ Mens Rea

Appellant also alleges that the military judge erred when she failed to instruct the panel on a mens rea for any of the Article 133, UCMJ, specifications.[8] We find no such error.

"Questions pertaining to the substance of a military judge's instructions, as well as those involving statutory interpretation, are reviewed de novo." *United States v. Caldwell*, 75 M.J. 276, 280 (C.A.A.F. 2016) (citations omitted). "Because Appellant did not object to the military judge's failure to instruct the members on a mens rea requirement … we review this issue for plain error" as well. *United States v. Haverty*, 76 M.J. 199, 208 (C.A.A.F. 2017).

"Military judges are required to instruct members on the elements of each offense …." *United States v. Davis*, 73 M.J. 268, 272 (C.A.A.F. 2014) (citations omitted). As noted earlier, Article 133, UCMJ, contains just two elements: "[t]hat the accused did or omitted to do certain acts; and [t]hat, under the circumstances, these acts or omissions constituted conduct unbecoming an officer and gentleman." *MCM* pt. IV, para. 59.b. The military judge adequately instructed the panel on each specification of Article 133, UCMJ, when she read the panel the elements as charged in each specification and provided the following instruction both orally and in writing:

> "Conduct unbecoming an officer and a gentleman" means behavior in an official capacity which, in dishonoring or disgracing the individual as a commissioned officer, seriously detracts from his character as a gentleman, or behavior in an unofficial or private capacity which, in dishonoring or disgracing the individual personally, seriously detracts from his standing as a commissioned

---

[8] Appellant also alleges the Article 133, UCMJ, specifications wrongfully omitted words of criminality, but we disagree. The specifications use the terms "inappropriate" or "unprofessional" or allege the conduct in each specification was unbecoming an officer and a gentleman. These allegations sufficiently contain words of criminality to state an offense for purposes of this appeal. *See United States v. Maderia*, 38 M.J. 494, 496 (C.M.A. 1994) (explaining the language "conduct unbecoming" was sufficient to state an offense).

officer. "Unbecoming conduct" means misbehavior more serious than slight, and of a material and pronounced character. It means conduct morally unfitting and unworthy rather than merely inappropriate or unsuitable misbehavior which is more than opposed to good taste or propriety.[9]

Appellant contends these instructions were inadequate because they make no mention of a mens rea requirement. Presumably, the military judge omitted anything specific about mens rea from her instructions because Article 133, UCMJ, contains no explicit mens rea requirement.

This case is strikingly similar to *Caldwell*, in which we held that maltreatment under Article 93, UCMJ, 10 U.S.C. § 893, was a military-specific offense, and so the government need only "prove general intent in order to obtain a conviction." 75 M.J. at 278. Like Article 133, UCMJ, Article 93, UCMJ, does not explicitly specify a mens rea. *MCM* pt. IV, para. 17.a. As we explained in *Caldwell*, although it is true that "wrongdoing must be conscious to be criminal," 75 M.J. at 280 (internal quotation marks omitted) (citation omitted), Congress is not required to include an explicit mens rea in every article of the UCMJ. *Haverty*, 76 M.J. at 203 ("[S]ilence in a criminal statute regarding a mens rea requirement does not necessarily prevent such a requirement from being inferred." (citation omitted)). When a statute is silent as to mens rea, we "only read into the statute that mens rea which is necessary to separate wrongful conduct from innocent conduct." *Caldwell*, 75 M.J. at 281 (internal quotation marks omitted) (citation omitted). A statute's silence can be indicative of a general intent scienter. *See United States v. McDonald*, 78 M.J. 376, 380 (C.A.A.F. 2019). "[G]eneral intent merely requires [t]he intent to perform [the actus reus] *even though the actor does not desire the consequences that result*." *Haverty*, 76 M.J. at 207 (alterations in original) (internal quotation marks omitted) (citation omitted). In the instant case, a general intent mens rea would require only that Appellant *intended* to commit the conduct alleged in each specification—i.e., making inappropriate comments and massaging his

---

[9] The military judge's definition mirrors the *MCM's* definition of conduct unbecoming. *MCM* pt. IV, para. 59.c.(2).

subordinate's back. It was up to the panel to determine whether Appellant's acts constituted conduct unbecoming. *See United States v. Miller*, 37 M.J. 133, 138 (C.M.A. 1993) (disagreeing with the appellant that the evidence was insufficient to prove the conduct unbecoming element and instead "hold[ing] that 'a reasonable military officer would have no doubt that the activities charged in this case constituted conduct unbecoming an officer.' " (quoting *United States v. Frazier*, 34 M.J. 194, 198 (C.M.A. 1992))).

Because "there is no scenario where [an officer] who engages in the type of conduct" Appellant engaged in "can be said to have engaged in innocent conduct," we infer a general intent scienter from Congress's silence. *Caldwell*, 75 M.J. at 281. "We base our conclusion on the unique and long-recognized importance" of an officer's behavior "in the United States armed forces, and the deeply corrosive effect that [indecorous behavior] can have on the military's paramount mission to defend our Nation." *Id.*

Conduct unbecoming is a "military offense that was specially created by Congress and prohibited under its own separate article … reflecting" a high level of congressional concern. *Haverty*, 76 M.J. at 205 n.10 (quoting *Caldwell*, 75 M.J. at 281, 285). "The gravamen of [Article 133, UCMJ] is that the officer's conduct disgraces him personally or brings dishonor to the military profession such as to affect his fitness to command … so as to successfully complete the military mission." *United States v. Schweitzer*, 68 M.J. 133, 137 (C.A.A.F. 2009) (internal quotation marks omitted) (citation omitted). Article 133, UCMJ, was drafted in response to the fact that "it is the primary business of armies and navies to fight or be ready to fight wars should the occasion arise." *United States ex rel. Toth v. Quarles*, 350 U.S. 11, 17 (1955). By criminalizing conduct unbecoming, Article 133, UCMJ, is intended to help ensure a "disciplined and obedient fighting force." *Parker v. Levy*, 417 U.S. 733, 763 (1974) (Blackmun, J., with whom Burger, C.J., joined, concurring). These traits are so essential to war fighting capabilities, that this article's foundations were established long before the Republic itself. *See Levy*, 417 U.S. at 745 (explaining that Article 133, UCMJ, originated in "the British antecedents of our military law," followed our

nation's founders across the Atlantic, and was adopted in a similar form by the Continental Congress in 1775). Because officer behavior is so important, "criminal liability for [conduct unbecoming] does not depend on whether conduct actually effects a harm upon [a] victim," but rather on whether the officer possessed the general intent to act indecorously, dishonestly, or indecently. *Caldwell*, 75 M.J. at 282; *MCM* pt. IV, para. 59.c.(2) ("There are certain moral attributes common to the ideal officer and the perfect gentleman, a lack of which is indicated by acts of dishonesty, unfair dealing, indecency, indecorum, lawlessness, injustice, or cruelty."). As Justice Blackmun wrote in *Parker v. Levy*— soldiers are expected to know the general difference between right and wrong. 417 U.S. at 762–63 (Blackmun, J., with whom Burger, C.J., joined, concurring) (explaining that soldiers understand "concepts of 'right' and 'wrong'" and that "[f]undamental concepts of right and wrong are the same now" as they've always been); *see also United States v. Meakin*, 78 M.J. 396, 404 (C.A.A.F. 2019) (detailing the history and purpose of Article 133, UCMJ, and noting that "it has historically been the case that officers are held to a higher standard of behavior").

Conscious conduct that is unbecoming an officer:

> is in no sense lawful. This behavior undermines the integrity of the military's command structure, and as we have repeatedly recognized in the context of dangerous speech in the armed forces, [t]he hazardous aspect of license in this area is that the damage done may not be recognized until the battle has begun. We therefore conclude that general intent sufficiently separates lawful and unlawful behavior in this context, and there is no basis to intuit a mens rea beyond that which we have traditionally required for Article [133], UCMJ.

*Caldwell,* 75 M.J. at 282 (internal quotation marks omitted) (citation omitted).

The military judge's instructions adequately explained the actus reus of Appellant's crimes—actions that could not, under the circumstances, have been innocent—and informed the members that they were to consider Appellant's conduct "under the circumstances." Under our precedent, this

instructional language "can reasonably be understood as requiring the panel members to determine whether Appellant" knew that he was engaging in certain conduct. *Id.* at 283. The military judge was under no requirement to offer any further instruction specific to general intent. As such, her instructions were not erroneous, let alone plainly erroneous.

## Judgment

The decision of the United States Air Force Court of Criminal Appeals is affirmed.